BOARD OF SUPERVISORS OF DE SOTO COUNTY *v.* WEATHERFORD.

[75 South. 114, Division B.]

1. COUNTIES. *Highways. Disposition of public road taxes. Statute. Construction.*

Under Laws 1912, chapter 145, section 6, providing that the public highway or highways surveyed and adopted by the commissioners under the preceding sections of the act shall be constructed and maintained out of the proceeds of bonds, the proceeds of such bonds to be used alone in their construction, and that the board of supervisors shall levy an annual tax on the recommendation of such commissioners, on all taxable property not to exceed one mill on the dollar, which shall be used to supplement the general fund of the county in maintaining said roads, the roads provided for must be constructed out of the proceeds of the bond issue alone, and hence the board of supervisors is not authorized to pay for construction work out of the one mill *ad valorem* fund under this chapter, nor out of the general county *ad valorem* fund for road purposes throughout the county.

2. HIGHWAYS. *Contracts with board of supervisors. Limitation of powers.*

Laws 1912, chapter 145, is a special statutory scheme, and the road district exercises only statutory powers, and exercise only such jurisdiction as is conferred on them by law, and parties dealing with this district must take notice of its powers, and cannot acquire greater rights than the board and commissioners exercising this special statutory authority is authorized to contract with or confer on them.

3. HIGHWAYS. *Disposition of general road fund. Discretion. Statute.*
Under Laws 1912, chapter 145, section 11, providing that nothing
in this act shall repeal any road law of the state that counties
working roads by contract shall be authorized to buy and collect,
a road tax from the whole county excluding the districts elect-
ing to come under this act, but that such portion of the proceeds
of the general county tax as would have been necessary to work
the roads in such district, had they not so elected, shall be sub-
ject to the control of the commissioners of said district, to be
used therein, the general *ad valorem* fund levied under Code
1906, section 4469, and referred to, is to be used in the discretion
of the board of supervisors anywhere in the county and in such
proportion as the board may deem proper.

APPEAL from the circuit court of De Soto county.
HON. E. D. DINKINS, Judge.

Mandamus by J. Hieskell Weatherford against the
Board of Supervisors of De Soto County and others.
From a judgment for petitioners, the county appeals.
The facts are fully stated in the opinion of the court.

*R. L. Dabney,* for appellant.

This is one of the cases in which a full statement of
it is about the best argument that can be made. When
chapter 149, Acts of 1910, is construed, the case settles
itself. Since the 1900 contract road law was passed by
the legislature, sections 4465 to 4475 of the 1906 Code
being but a reenactment of the 1900 contract road work-
ing law, the three mill road tax, and the commutation
money from road bonds constitute the only fund avail-
able for road maintenance, except where some one of
the many special road laws have been adopted. And
since the year 1900, roads in counties having adopted
the contract system could only be worked with certain
designated funds.

Sections 4 and 6, of chapter 149, evidently contem-
plate the roads being constructed out of the proceeds of
the bond sale, and if after construction any of the bond
money remain, it can be used in maintenance. But in

addition to any balance of the bond money, the main-
tenance fund is to receive all of the one mill levy, and
a distributive share ,of the three-mill levy, provided for
in section 4469 of the Code of 1906, and a distributive
share of the commutation money paid by road hands in
the district.    The three-mill tax being a county road ·
tax, and the commutation money being a district fund
—that is, the board of supervisors could use the three-
mill road tax in any part of the county, regardless of
where collected while the commutation money must be
used in the supervisor's district in which collected.    It
is true that section 11, Acts of 1910, chapter 149, directs
that a proportionate share of the three-mill tax, as well
as a share of the commutation money be placed to the
·credit of the bond road commissioners, but the same
section provides that other road laws are not repealed
by the enactment of chapter 149.    What I am trying to
say is, that under section 4469 of the Code the *ad valo-
rem* road tax can be used by the supervisors in any
part of the county that has come under the contract
road working system.    That being true, the direction
given in section  11 of chapter 149, that the *ad valorem,*
as well as the commutation tax be· divided between the
bond roads and the non-bond-roads does not deprive ,the
board of supervisors of the right to use the three-mill
tax in any district of the county they may see proper.
As I see it, the board could say, "We will divide the *ad
valorem* road tax into four, instead of five equal parts,
and use the four portions in the first, second, third, and
fourth districts, but we will use none of it in the fifth."
This might be arbitrary but could it be prevented, if in
the discretion of the board such use was to the best in-
terest of the county as a whole.    And if it could not be
prevented, how can it be said that the judicial depart-
ment of the government can, by mandamus direct an-
other department how its discretion is to be exercised.
I concede that if the board concluded to expend the *ad
valorem* road tax in the district in which collected, that

having exhausted its discretionary power as to what part of the county it would use this tax, in that the courts could then say that the directions of said section 11 should be observed. But until it is shown that the board has so elected to use the three mill road tax, the courts cannot say to it that it must so use it; and further, the court having used the board's discretionary power for it, could not say to the board: "We have decided for you that you will use this tax in the district in which collected, now the directions of section 11, of chapter 149 apply, and you must divide with the bond roads in the district."

But apart from the question of the use of *ad valorem* road tax, was the board under any, duty to share any fund with the bond road commissioners during the period of construction? Is it not much more probable that the legislature thought about it as the board did— that while the roads taken over by the commissioners were under construction—and therefore not in a condition to be used by the traveling public, that the road-maintenance funds of the county were to be used in the upkeep of roads that were in use?

If my construction of the "bond-road" law is correct the judgment of the circuit court must be reversed for still another reason: The very arrangement of the act shows that the one-mill tax, provided for in section 6, is for maintenance. The act provides for the bond issue; for the taking over of roads that have been built—not before, for the levy of the one-mill tax for maintenance, surely this tax is beyond the reach of the holder of a warrant for the construction of a bond road.

If the judicial department has the power to coerce the board into levying a special tax for the payment of these warrants, I sincerely hope the power will be exercised. But as the appellees did not perfect cross-appeal, this court may be without jurisdiction to consider the action of the lower court in dismissing the mandamus petition in so far as it prayed for an order to

the board to levy the special tax. However, if the cases could be treated as though cross-appeals had been perfected, the appellants will agree, as that is about the only way to pay this money without inflicting utter ruin on the bond roads of two districts.

I respectfully submit that for the reasons given above the judgment of the circuit court should be reversed, and the causes remanded.

*Wilson & Armstrong* and *L. E. Farley,* for appellee.

It was the duty of the board of supervisors of De Soto county, under section 11, chapter 149, Acts of 1910, to apportion to the Separate Bond Road District of the Fifth Supervisors District, to be subject to the control of the commissioners of the district and to be used therein, out of the proceeds of the general *ad valorem* and commutation tax levied on the whole county for road purposes, such an amount as would have been necessary to work the bond roads of said district had no separate bond road district been created. The word "shall" in the section is mandatory. Chapter 149, Acts of 1910, section 11, 7 Words & Phrases, pp. 6463 and 6467—"Shall"; 4 Words & Phrases (New Series), pp. 557 and 561, same title; *City of Newton* v. *Board of Supervisors Jasper County* (Iowa, 1907), 112 N. W. 167; *Haythorn* v. *Van Kernen & Son* (N. J. 1909), 74 Atl. 102.

The purpose of this section of the act was to prevent the taxpayers of the bond district from paying double taxes, the general tax levied by the board on the whole county, and payable by those in the bond district as well as others, and the special tax or taxes levied in the district alone on account of the bond issue, etc., without deriving a benefit from both of the funds realized from said taxes. *McComb City* v. *Pike County,* 91 Miss. 736, 45 So. 871; *City of Albion* v. *Boone County* (Neb. 1913), 143 N. W. 749.

The board of supervisors had no authority to create a separate "Bond Road Maintenance Fund," distinct

from the fifth supervisor's district bond road fund, nor
to prohibit the payment of appellee's warrants from
said fund.  The act does not contemplate the creation of
more than one fund, as prescribed in section six,
which fund should comprise the proceeds of the sale of
bonds, the proceeds of the one mill tax levied on the
property within the district, and the district's propor-
tionate share of the proceed of any general *ad valorem*
or commutation tax levied on the whole county.  There
is no justification for the distinction drawn by the board
of supervisors between construction and maintenance.
Section 6, chapter 149, Acts of 1910; *Weston* v. *Han-
cock County,* 98 Miss. 800, 54 So. 307; *Town of Pelham*
v. *The B. F. Woolsey,* 16 Fed. 418; *Hanlon* v. *Clearcy,*
133 S. W. 953, 142 Ky. 46; *Dallas County* v. *Plowman,*
99 Texas, 509, 91 S. W. 221; *Ex Parte Crooks* (Tex.),
135 S. W. 139; *Smith* v. *Grayson County* (Texas), 44
S. W. 912; *Thomason* v. *Court of County Com'rs* (Ala.
1913), 63 So. 87; *State* v. *St. L. I. M. & So. Ry. Co.*
(La.), 70 So. 621.

Mandamus is a proper remedy to compel the board
of supervisors to obey the law under which they act,
and to perform an official duty.  *Jefferson County* v.
*Arrighi,* 51 Miss. 667; *Kelly* v. *Wimberly,* 61 Miss.
548; *State ex rel.* v. *Bisping* (Neb.), 130 N. W. 1034;
*Jefferson County* v. *Clark* (Georgia), 43 S. E. 722;
*Humboldt Co.* v. *Churchill County Com'rs,* 6 Neva-
da, 30.

It is immaterial that the *pro rata* of the general *ad
valorem* and commutation taxes levied on the whole
county between the time of the creation of the bond road
district and the March, 1914, meeting of the board,
which should have been alloted to the district, may have
been expended.  If they have been expended the ex-
pnditure was illegal, and the county remains liable on
its obligations.  *Hebron Bank* v. *Lawerence County*
(Mississippi), 69 So. 209; *State ex rel.* v. *Bisping*
(Neb.), 130 N. W. 1034; *Oregon City* v. *Clackamas*

*County* (Ore.), 52 Pac. 310; *People* v. *Bender,* 36 Mich.
195; *People* v. *Comptroller of City of New York,* 77
N. Y. 45.

ETHRIDGE, J., delivered the opinion of the court.

In the year 1912 the board of supervisors of De Soto
county, acting under chapter 145, Laws 1912, which
amends chapter 149, Laws 1910, created road districts
in three supervisors districts of the county, among the
districts being district No. 5, which is involved in the
present controversy, and issued bonds under the said
chapter in the sum of fifty thousand dollars, and award-
ed contracts to the appellee for the construction of roads
in said district, and also let contracts to other parties
for certain portions of the said district. The appellee
completed his contract, and on the 5th day of June,
1913, presented his claim, which was approved by the
road commissioners and allowed by the board of super-
visors, and presented to the county depository for pay-
ment, but was not paid for the reason that the bond
fund had been then exhausted. The county had levied
a general *ad valorem* road tax in the county, and had
also levied a one-mill tax under the provisions of chap-
ter 145, Laws 1912, and placed these funds in a sep-
arate fund called the "maintenance fund," and in-
structed the treasurer to keep a separate account, and
only to pay out of this fund "maintenance" claims.
The appellee requested the board of supervisors to
transfer this "maintenance fund" to the "bond road
fund," contending that all said funds should be kept in
one fund, and that the board had no lawful authority
to separate the funds, and requested that his claim be
allowed from the fund known as the "maintenance
fund." This the board refused to do, and the appellee
filed a mandamus in the circuit court seeking to compel
the board to transfer the fund from the special mainte-
nance fund ordered to be kept by the board to the bond

road fund as one fund, and to allow claims for road construction out of said fund, and also other warrants in the order of their registration and presentation.

The petition for mandamus alleges also that the board had authority to issue additional bonds for the purpose of paying said claims, alleging that the fifty thousand dollars issue did not exhaust the ten per cent. of the assessed value of taxable property limit to which the board was authoried to issue bonds. But the petition does not state what the original notice to the taxpayers as to the issuance of bonds contains, nor whether the said notice was notice of an issuance of fifty thousand dollars road bonds, or a notice of an issuance not to exceed ten per cent. of the assessed valuation. It is alleged that the claims for construction under contracts awarded exceeded the funds derived from the selling of bonds by six thousand, one hundred and thirty seven dollars and ten cents, and that the ten per cent. of the assessed valuation would amount to more than enough to cover this amount. It is also alleged in the petition that the board had levied a three-mill tax on the taxable property of the county for' general road purposes, and that under section 11, chapter 145, Laws 1912, that the board was compelled to pay into district No. 5 such proportion of this county *ad valorem* road fund as it would take to work the bond roads if the said district had not come under the law under which bonds were issued, and that it would take forty per cent. of this fund to give this district its ratable share, and that the board had not awarded to the district its share, and asked that the board be compelled to do so. The commissioners of the road district No. 5 were made parties defendant to the suit, and it was alleged that it was their duty to recommend the issuance of additional bonds not to exceed the ten per cent. limit of the assessed valuation of the taxable property in the district. The prayer for relief in the petition prayed that the warrants be adjudged valid and en-

forceable claims against the district and against the county, and that mandamus issue requiring the board of supervisors to restore to the road bond district of the fifth supervisors district the *pro rata* share of. the general road fund of the county realized under the general tax levy for the years 1912, 1913, and 1914, and that mandamus issue requiring the board to rescind its action in separating the bond sale moneys from the one-' mill tax levy, and the *pro rata* of the general road fund allotted to said district, and that said fund be made liable to the payment of petitioner's warrant; and, lastly, for mandamus requiring the commissioners and the supervisors to authorize the issuance of additional bonds not to exceed ten per cent. of the assessed valuation of property.

The petition was demurred to by the county on the grounds that the court was without jurisdiction to grant the relief sought by the petition; second, that the board of supervisors has no power conferred on it to make the orders which the petition prays that it be compelled to make; third, that the authority of the board to create bond roads and issue bonds for their construction being derived from chapter 149, Laws 1910, as amended by the act of 1912, does not authorize the board to levy a maintenance tax until the roads have been constructed, and that the direction of the statute to apportion the county road funds between the county roads of the district and the bond roads does not apply to bond roads during the period of construction, but that the apportionment of the *ad valorem* fund is intended as a maintenance fund, and not a construction fund; fourth, that the court cannot compel the board to perform any act which the board could not do voluntarily; fifth, that the acts sought to be compelled by mandamus was the exercise of a discretionary power, and cannot be controlled by the court. The court overruled the demurrer, and the county declined to plead further, and the court awarded the relief prayed for by

mandamus petition, except as to the issuance of bonds in excess of fifty thousand dollars and within the ten per cent. limitation, which prayer was refused by the court.

It is the contention by the county here that under section 6 of chapter 145, Laws 1912, that the roads must be constructed out of the proceeds of the bond issue, and that the annual tax to be levied under the act is to be used to supplement the general road fund of the county in "maintaining" the roads (after construction) and the culverts, bridges, and levies thereon, and that the board is not authorized to pay for the construction work out of the one-mill *ad valorem* fund under this chapter, nor out of the general county *ad valorem* fund for road purposes throughout the county; and, also, that the general *ad valorem* fund levied under section 4469 of the Code of 1906, and referred to in section 11 of chapter 145, is a fund to be used in the discretion of the board anywhere in the county, and in such proportions in the respective parts of the county as the board may see proper to apply it in maintaining roads, and that it cannot be used for construction purposes under this good roads chapter. We think the solution of the controversy depends upon the construction of sections 6 and 11 of chapter 145, Laws 1912, which read as follows:

"Sec. 6. That the public highway or highways so surveyed and adopted by such commissioners shall be constructed and maintained out of the proceeds of such bonds; proceeds of such bonds to be used alone in their construction; and the board of supervisors shall levy an annual tax, on the recommendation of such commis-' sioners, on all the taxable property in such district or districts of not exceeding one mill on the dollar, which shall be used to supplement the general fund of the county in maintaining said road or roads and the culverts, bridges and levees thereon. And for the purpose of paying such bonds and interest and so maintaining

said roads, the board of supervisors shall, at the time
fixèd by law, levy the tax for the same and it shall be
the duty of the county auditor to keep a separate ac-
count of such funds so raised from the other funds of
the county; and it shall be the duty of the treasurer,
who shall be the treasurer of such funds and liable on
his bond therefor, to keep a separate account thereof.
And all allowances against said special fund shall be
made by the board of supervisors on the recommenda-
tion of such commissioners and special warrants pre-
pared for the purpose shall be issued against said
funds.''

"Sec. 11. Nothing in this act shall be taken to repeal
any road laws of the state. Counties working the pub-
lic roads by contract, or that may hereafter do so, shall
be authorized to levy and collect a road tax from the
whole county, including the districts electing to come
under this act. Such portion of the proceeds of said
tax as would have been necessary to work the roads in
such districts had they not so elected, shall be subject
to the control of the commissioners of said district to be
used therein. But the districts separately taxed to pay
principal and interest on bonds for building roads made
of stone, gravel, chert, slag, or sand clay, or of a com-
bination of such material or any material equally dura-
ble shall not be subject to an additional tax for building
such roads in other parts of the county, or for the pay-
ment of principal and interest on any county bonds
hereafter issued for road purposes, without the consent
of a majority of the qualified electors of said district
voting in an election held for that purpose. In counties
working convicts on the public roads, such convicts
shall be worked as far as practicable in cutting down
hills and reducing the grade of roads where they will
not be subject to frequent and unnecessary removal
from one place to another.''

It will be noted in section 6 that the language used by
the legislature is that the highway selected, surveyed,

and adopted by the commissioners under preceding sections of the act shall be constructed and maintained out of the proceeds of such bonds, the proceeds of such bonds to be used alone in their construction. It seems to us that it was the evident purpose of the legislature to limit the board in the construction or road building to the use of the funds raised by the sale of bonds, and we think that is what is meant by the phrase "proceeds of such bonds to be used alone in their construction." Taking this clause with the preceding clause, it seems to us that it is the only construction that can be placed upon it. Then the board is directed to levy an annual tax on all the taxable property in the district not exceeding one mill on the dollar which is to supplement the general road fund of the county "in maintaining" the road, culvert, bridges, and levees, and provides that it shall be the duty of the county auditor to keep a separate account of such funds from the other funds of the county, and the county treasurer must keep a separate account, and is liable on his bond for so doing. The section then provides that all allowance against the said special fund by order of the board on recommendation of the commissioners shall be on special warrant prepared for this purpose. In considering the scheme of this chapter we are considering a special statutory scheme, and the road district exercises only statutory powers, and exercises only such jurisdiction as is conferred on them by law, and parties dealing with this district must take note of its powers, and cannot acquire greater rights than the board and commissioners exercising this special statutory authority is authorized to contract with or confer on them. We think, therefore, that the county was right in keeping the one-mill *ad valorem* levy separate from the proceeds of the bond sale, and in refusing to pay for construction work out of the one-mill *ad valorem* levy under this act.

Under section 11 above quoted it is provided that nothing in this act shall repeal any road law of the state; that counties working roads by contract shall be authorized to levy and collect a road tax from the whole county excluding the districts electing to come under this act, but providing that such portion of the proceeds of general county tax as would have been necessary to work the roads in such district had they not so elected shall be subject to the control of the commissioners of said district to be used therein. In considering this section the question arises as to who is to determine how much of the proceeds of the general county road tax is to be turned over to the commissioners of the district, and upon what basis is the distribution between the district and the other parts of the county to be made. It will be noted that the statute here is different from the statute providing for a division of the *ad valorem* taxes collected within a municipality between the county and the municipality. In that case the fund to be divided is the fund collected within the municipality, and the proportion that each is to receive is fixed by statute. There is nothing left for determination except the amount of taxes that will be collected or that have been collected, and that is definite and certain, because only such as has been collected is divided. Here, however, the tax is a general tax over the county without reference to the district it is collected in, and there is a question of the estimation and calculation of the cost of construction of the roads in the district operating under this chapter that in its very nature it is incapable of being enforced and administered by the courts.

Under the law as declared in section 4469 of the Code the board of supervisors determine absolutely where the *ad valorem* fund shall be used. It does not have to be apportioned between the districts at all. The very purpose of the fund in that case is to have a general fund to supplement such road links or districts as are

not able to maintain its road on the commutation or *per capita* taxes provided in said section. Under the scheme of that chapter each district retains its *per capita* road tax as a separate road fund. This fund may or may not be sufficient to maintain the highways of the district, depending largely upon the character of the roads of the district and the number of inhabitants subject to the tax. Other districts might contain a sparse population and large streams and swamps or roads which for some other reason were exceedingly difficult to maintain, and which could not be maintained on the *per capita* tax of such district. These conditions would necessarily vary according to the topography and hygrography of each district and county, and the supervisors alone could determine these facts. It is not competent to aver, as was done in this case, that at least a certain percentage of such funds should be apportioned to a particular district. The board of supervisors are given full jurisdiction by the Constitution of the subject of roads, and are given full jurisdiction by statute to determine what moneys, if any, are to be spent upon a given road out of this *ad valorem* general county fund. It would be folly of the rankest kind to undertake to apportion this road fund on a mileage basis over the county so as to give each mile an equal porton. There would be many miles of road where no such expenditure would be required to supplement the local funds, and many other miles where such expenditure would be so infinitesimal and inconsequential as to be a waste of the public money. Taking sections 11 and 6 together, it is manifest that this *ad valorem* fund, whatever portion may have been awarded to the district and the *ad valorem* fund provided by section 6, chapter 145, Laws 1912, are to be used in maintaining the roads as distinguished from constructing roads.

Much is said in the argument and briefs as to the meaning of the word "shall" in section 11, providing that the proportion of the county fund as may be neces-

sary to work the roads had not the road come under the district "shall be subject to the control of the commissioners." While the word "shall" is usually mandatory when referring to performance of official duties, but it is manifest in this statute that the word "shall" does not mean that the board must turn over a given amount, or any amount of the county *ad valorem* fund to any particular road, but that if the board finds as a fact that if the road was a part of the county highway system as distinguished from a district road, that it would be necessary to use a portion of the county *ad valorem* tax to work said roads, then in such case the board should turn the control of this fund over to the district commissioners, but, as under the law, all the acts of the commissioners are subject to the approval or rejection of the board or supervisors, and must be so to be constitutional, the word "shall" loses its mandatory meaning, as that term is usually used and understood in law. The authorities cited by the appellee to sustain its contention may be distinguished from this case. After carefully considering the questions presented by this record, we are of the opinion that the circuit court erred in awarding the relief prayed for under the petition for a mandamus. If the petitioner is entitled to relief at all, it would be to have the county supervisors and the district road commissioners issue additional bonds, and this could only be done if the notice published to the electors of the district provided the board should have authority to issue bonds to the amount of ten per cent. of the assessed valuation of the county.

The judgment of the court, therefore, will be reversed and remanded, with leave to petitioner to amend his petition if he so desires, and present to the circuit court the same anew in accordance with this opinion.

*Reversed and remanded.*