FABRIC FIRE HOSE COMPANY *v.* MAYOR AND BOARD OF ALDERMEN OF CITY OF VICKSBURG.

[77 South. 911, Division B.]

1. MUNICIPAL CORPORATIONS. *Extension of territory. Liability for debts.*

Section 3301, Code 1906, as amended by Laws 1908, chapter 186, and the other cognate sections in chapter 99 of the Code on municipalities provide alone for power in a municipality to incorporate by extension of its limits, adjacent unincorporated territory. Those sections nowhere look in any of their provisions to any grant of power to an existing municipality, to extend its territory over the territory of another municipality and thus absorb it, so that where a city extended its boundaries in ignorance of the fact that the new boundaries included another incorporated town, its ordinance was void, and it did not thereby become liable for the debts of the town thus attempted to be absorbed.

2. SAME.

In such case where the incorporated town thus absorbed was later dissolved and afterwards the city again extended its boundaries, so as to include the territory of such town, the city was not liable for the debts of the town, since at the time of the valid extension of its boundaries there was no existing incorporated town.

3. MUNICIPAL CORPORATION. *Extension of territory. Liability for debts.*

Where a city extended its boundaries so as to include the territory of a formerly incorporated town, the city had no power at the suit of a creditor of such town to tax the included territory to pay the debts of the town which had been abolished.

APPEAL from the chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Bill by the Fabric Fire Hose Company against the Mayor and Board of Aldermen of the City of Vicksburg. Decree for defendant, and plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. B. Dabney,* for appellant.

Counsel for appellee rely upon the case of *Village of Gandsi* v. *Town of Seminary,* 49 So. 908, in support of the contention that this attempt on the part of the city

to annex the greater part of Walters was void. In that case it is held that while the purpose of the legislature was clearly to prevent the concurrent existence of two adjacent municipalities where one had more than five hundred inhabitants, yet, there was no way prescribed whereby one municipality could absorb another without the consent of the latter.

It occurs to us that the two cases are not necessarily parallel, for in the Gandsi case the inhabitants were unwilling to be annexed to Seminary and opposed being absorbed, while in the instant case there was not only no objection raised at the time, but a few months afterwards the people of Walters surrendered their charter and submitted quietly to being taxed by the city of Vicksburg, which they have been ever since. Why was this not a full compliance with the statute? Its language is that such smaller municipality ''shall be abolished'' when the said existing city or town shall extend their limits to take in said territory. It does not say ''shall stand abolished.'' The people of Walters almost immediately proceeded to act under the command of the statute and surrender their charter.

But even tho it be conceded that the first attempt of the defendant city to annex this territory was invalid, it will be admitted by appellee that the last ordinance adopted by Vicksburg (January 1, 1917) in that regard was valid and accomplished the purpose attempted by the first, the town of Walters having, long before this last ordinance ceased to exist and the territory formerly embraced in same having become ''adjacent unincorporated territory.'' This last ordinance was adopted to make the matter certain and leave no doubt as to said territory having been properly annexed.

If, then, the former attempt was valid, under the statute itself the defendant city became liable for the debts of Walters, for the statute provides that when so taken in ''all legal debts and liabilities shall be assumed by the city or town and they shall be legally responsible

for same as if they had been contracted by the said city or town."

If said first attempt was not valid, then the city is still liable for said debts, for by our own statutes and by the decisions of all the courts, the land formerly in Walters is impressed with a lien for their payment; the debt of appellant was a valid and subsisting obligation on which a judgment had been procured and was duly enrolled, and the defendant city annexed said lands with full notice and *cum onere.*

Our own supreme court once held that the annullment of the charter of a municipality extinguished its debts (*Port Gibson* v. *Moore,* 13 S. & M. 157), but this decision was afterwards overruled in the case of *Ross* v. *Wimberly,* 60 Miss. 345, in which Judge CHALMERS delivered the opinion of the court and said: "On the 20th of January, 1880, the charter of the town of Coffeeville was repealed by the legislature. One month thereafter the town was reincorporated by the same name, with substantially the same powers with some excision of territory and population. The legal effect of this was, not to extinguish the debts of the original corporation, but to leave them subsisting as valid obligations against the new one. 1 Dill. on Mun. Corp., sec. 170; *Broughton* v. *Pensacola,* 93 U. S. 266; *Girard* v. *Philadelphia,* 7 Wall. 1.

"The case of *Port Gibson* v. *Moore,* 13 S. & M. announcing a different view, is contrary to the whole current of modern authority and is overruled."

Here we see that the new corporation created out of a part of the same land was held liable for the debts of the old town, the charter of which had been surrendered. The old town was abolished, as in the instant case, the territory remained unincorporated for a time, a new town was formed out a part of this territory. In effect, these exact steps were taken in the instant case, the only difference being that the territory was made part of an existing city instead of being formed

into a new town. The point is that liability for the debts followed the property and we can see no real difference between the Coffeeville case and that of Vicksburg and Walters. In the former it might have been and doubtless was urged that there was no statute exactly covering the case.

· The property of the individual inhabitants cannot be levied upon under the judgment but can be reached only through taxation by some power authorized to levy and collect a tax. *Horner* v. *Coffee*, 25 Miss. 434; *Jefferson City Gas Light Co.* v. *Creeman Clark and City of New Orleans*, 95 U. S. 644, 24 L. Ed. 523; *State* v. *Hamilton*, 40 Kans. 323; *The Saphire*, 78 U. S. —11 Wall. 164; 20 Wall. 127; *Broughton* v. *Pensacola*, 93 U. S. 266; 23 U. S. 896; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; 25 U. S. 699; *State of Kansas* v. *Charles Edward Lewis*, 133 U. S. 198, 33 L. Ed. 604; *Mount Pleasant and Caledonia* v. *Beckwith*, 100 U. S. 414; *Colchester* v. *Seaber*, 3 Burr. 1866.

"Municipal debts cannot be paid by an act of the legislature annulling the charter of the municipality, and, if not, then the creditors of such a political division must have some remedy after the annullment takes place. Without officers, or the power of electing such agents, a municipal corporation if it can be called, would be an entity very difficult to be subjected to judicial process or to legal responsibility; but when the entity itself is extinguished, and the inhabitants with its territory and other property are transferred to other municipalities, the suggestion that creditors may pursue their remedy against the original contracting party is little less than a mockery. Public property with the inhabitants and their estates, and the power of taxation, having been transferred by the authority of the legislature to the appellants, the principles of equity and good conscience require that, inasmuch as they are and have been for nearly twenty years in the enjoyment of the benefits resulting from

the annexation, they shall in due proportions also bear the burdens. *New Orleans* v. *Clark,* 95 U. S. 644, 654, 24 L. Ed. 521, 522; *Beckwith* v. *Racine,* 7 Biss. 142, 149. Where the legislature has repealed a municipal charter, or superseded a municipality by dissolving it or destroying its indentity without making provision for its debts, one of three results must follow: 1. Either the act which does this is wholly void and inoperative, from which it would result that the legal existence and identity of the indebted municipality will remain; or, 2. The creditor is without remedy except by an appeal to the legislature; or 3. Equity will assume jurisdiction, treating the property subject to taxation as a fund out of which the creditor is entitled to payment, and will order the officers of the new organizations within which such property is situate, to levy thereon the necessary taxes to pay the creditor. This last result, although supposed by some to be inconsistent with views expressed by the supreme court, in cases where the precise question now under consideration was not in judgment, has been judicially sanctioned by the United States court for Wisconsin; and where the circumstances are such as that equity can clearly afford a practicable remedy without doing injustice to others, it is based upon considerations which commend themselves to the sense of universal justice. This view, since the foregoing was written, has received the sanction of the supreme court of the United States." Dillon's Municipal Corporations, 173, 186.

Beginning with the year 1910, the City of Vicksburg has, each year, collected taxes on eighty-three and one-third per cent. of the property formerly embraced in the town of Walters. Many times over has the amount of the debt been paid into the city treasury from this source. At the time of the annexation, whether it was in 1909 or in 1917, the judgment in appellant's favor against the town of Walters was on the judgment roll of Warren county. The annexation was made with full

knowledge of the facts. We cannot but believe that, under all the circumstances of this case, this honorable court will hold the city of Vicksburg liable for this entire debt.

*Anderson, Vollor & Kelly,* for appellee.

Appellant's bill is many barrelled, and each barrel loaded with different kinds of ammunition. It is intended to shoot almost any kind of game that may present itself. The prayer is divided into four parts: 1. For a decree against appellee for the full amount due it under its judgment, with interest and costs. 2. If mistaken in this, for that proportion of said judgment as the territory taken in bears to the whole territory of Walters. 3. For mandamus to compel appellee to levy and collect a special tax from the property of this territory sufficient to pay said debt; and, 4. For anything that the court under the facts chooses to give it.

We will consider the first two of these prayers together, and in doing so will follow appellant's brief and review its authorities. We desire to say, however, that under no circumstances, we apprehend, will the city of Vicksburg be required to pay all of the indebtedness of the whole town of Walters. While appellant claims in its bill "that the taxable area taken into said defendant city is about eighty-three and one-third per cent. of the whole taxable area formerly embraced in said town of Walters," which by our demurrer we have admitted, yet we are safe in saying, and as a critical examination of the boundaries of the old town of Walters and the territory so taken in under the ordinance referred to, as appears in the bill, will confirm, probably that not more than one-fourth of the real value of the taxable property of the town of Walters is embraced in the Fort Hill territory under consideration.

By a careful examination of every one of appellant's authorities it will be seen, we respectfully submit, that in their facts they are essentially and widely different from the facts of the case at bar; we call attention especially to the fact that in every instance where the new municipality has been required to pay the debts of the old one there was either a re-incorporation of the old municipality or it was abolished by act of the legislature and a new one authorized and provided to spring up on the site of the old one, thus establishing the legal relation of predecessor and successor a *sine qua non* to liability.

The first case cited on the point is that of *Ross* v. *Wimberly*, 60 Miss. 345. The facts in this case were that the charter of the town of Coffeeville was repealed by the legislature of 1880. It is evident that this was done for the purpose of defeating its debts, under the authority of *Port Gibson* v. *Moore*, 12 S. & M. 157. One month thereafter the town was re-incorporated by the same name, with substantially the same powers, same territory and same population, the court decided that this was practically the same town and that it must, therefore, pay the valid obligations of the old one.

The next case cited is that of *Jefferson City Gas Light Co.* v. *Clark and City of New Orleans*, 95 U. S. 644, 24 L. Ed. 521. In this case by an act of the legislature of Louisiana of 1874 the town or municipality of Carrollton was annexed to New Orleans, under the provision that the city of New Orleans should assume to pay the debts of the old municipality.

The supreme court of the United States decided that under that act of the legislature whether the payment of the debts had been provided for or not the city of New Orleans was liable. And this is the sum total of the decision. Nothing like the case at bar.

The next case cited, and quoted from at great length, is that of the *State of Kansas* v. *Lewis*, 133 U. S. 198, 33 L. Ed. 604. In this case Comanche county, in the

state of Kansas, contracted debts and afterwards tem-
porarily went out of existence. Some time after that
the county was revived and re-organized, but sought
to escape the payment of the debts of the old county.
A suit was brought against it to enforce the payment
of these debts, and the supreme court of the United
States decided that the debts of a county contracted
during a valid organization remained the obligations
of the county, although for a time the organization be
abandoned and there be no officers to be reached by the
process of the court.

It will be observed that the reason that this county
abandoned its organization was for the purpose of
repudiating these very debts which it was claimed and
provided had been fraudulently contracted, but the
court said that upon a re-organization or reviving of
this county it had to take with it the responsibilities
of the old, the evidence of the debts having passed in
the meantime into the hands of innocent purchasers, still
nothing similar to the case at bar appears.

The next case cited and also extensively quoted from
is that of *Broughton* v. *Pensacola,* 93 U. S. 266, 23 L.
Ed. 896. In this case the city of Pensacola had con-
tracted a large indebtedness by subscribing two hundred
and fifty thousand dollars to the capital stock of a
certain railroad company, etc. Afterwards it under-
took to repudiate this indebtedness by having its charter
changed or amended so as to substitute a new one
in its place. The creditors sued, and the supreme
court of the United States held, quoting from the sylla-
bus prepared by Mr. Justice FIELD, that:

"A change in the charter of a municipal corporation
in whole or part, by an amendment of its provisions,
or the substitution of a new charter in place of the old,
embracing substantially the same corporation and the
same territory, will not be deemed, in the absence of
express legislative declaration otherwise, to effect the
identity of the corporation, or to relieve it from its

previous liabilities, although different powers are possessed under the amended or new charter, and different officers administer its affairs.'' Still wholly unlike the case at bar.

The next case cited and extensively quoted from by appellant is that of *Mount Pleasant* v. *Beckwith,* 100 U. S. 514, 25 L. Ed. 699. In this case it was decided simply and only that, quoting from the syllabus:

''Where one town is merged in two others by a legislative act, unless the legislature regulate the rights and duties of the two latter, they succeed to all the public property and immunities of the extinguished municipality and they become liable for all the debts previously contracted by it.''

It will be observed by an examination of this case that there was another effort on the part of an existing corporation to repudiate certain indebtedness by having itself merged into another municipality, probably created for that very purpose.

These, with the citations of authorities made in the different cases decided, are all the authorities relied on by appellant to support its contention herein, and as pointed out in the review of each of the cases it will be seen that they are entirely unlike the case at bar.

The case of *Port of Mobile* v. *Watson,* 116 U. S. 289, 29 L. Ed. 620, practically announces the rule stated. Quoting from the syllabus the decision of the court is as follows: ''Here a municipal corporation is dissolved and a new corporation is created, composed of substantially the same community, including substantially the same taxable property, within reduced territorial limits, organized for the same general purposes and holding by transfer, without consideration, the public property of the former, it is the successor of the old corporation and is liable for its debts.''

This was another case where the effort was made to repudiate the debts contracted by the city of Mobile by dissolving the corporation and re-organizing it un-

der the name of the Port of Mobile. The court there pertinently says in passing upon the question: "It is, therefore, a vital question in the case whether the Port of Mobile is a legal successor of the city of Mobile and bound for its debts."

The same rule is announced in the case of *Shapleigh* v. *San Angelo,* 167 U. S. 648, 42 L. Ed. 310; 1 Dillon Municipal Corp. (4 Ed.), sec. 172. Counsel for appellant has not cited a single case, we submit, that upholds his contention. The city of Vicksburg, can in no sense be called the "legal successor" of the old town of Walters or any part of it.

The third prayer of the bill is that this court, a court of equity, shall require and compel appellee, the city of Vicksburg to levy and collect a special tax upon the property constituting said teritory for the purpose of paying off this indebtedness. This is a prayer for a writ of mandamus, pure and simple, as that is the only remedy under our statute that can be resorted to for that purpose, and the proper and only forum for that remedy is the circuit court as shown by chapter 94, Code 1906. *Mayor and Aldermen of the City of Davenport* v. *United States ex rel. Lord,* 76 U. S. 409, 19 L. Ed. 704, and note.

It seems to us, therefore, that the demurrer was well taken and that the decree of the lower court in sustaining the same and dismissing the bill was eminently right and just, and that therefore the case should be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellant is a judgment creditor of the defunct town of Walters, in Warren county, Mississippi. It exhibited its bill of complaint against the city of Vicksburg in an effort to require the defendant city to pay this judgment. The claim is based upon the following state of facts: On December 6, 1909, while the town of Walters was in existence, the city of Vicksburg, under assumed

statutory power, extended its limits to take in what is referred to as "Fort Hill," a strip of territory lying between Fort Hill road on the east, National Cemetery road on the west, and Mint Springs bayou on the north. The territory attempted to be embraced was, as a matter of fact, part of the town of Walters, but the mayor and aldermen of the city of Vicksburg did not know at the time that the ordinance extending the limits of Vicksburg was trespassing upon or taking in territory belonging to the town of Walters. On May 12, 1910, some four months after the ordinance attempting to embrace Fort Hill within the limits of Vicksburg, the town of Walters voluntarily surrendered its charter, and was by proclamation of the Governor abolished. In 1911, and again in 1915, ordinances were passed by the city of Vicksburg, altering its boundaries, and each time the entire boundaries of the city, as changed, including Fort Hill, were described with particularity. During all of this time the authorities of the city of Vicksburg appeared to have been without actual notice that Fort Hill was a part of the town of Walters when the first ordinance of December, 1909, was passed. Upon detecting that the ordinance of 1909 was probably void, and on January 1, 1917, the mayor and board of aldermen of the city of Vicksburg again passed an ordinance, taking in Fort Hill territory by proper description. The bill has proper averments to show that the complainant is the owner of an unsatisfied judgment against the town of Walters; charges that the territory formerly embraced in the town of Walters, but now taken in by Vicksburg, amounts in taxable area to eighty-three and one-third per cent. of the whole taxable area formerly embraced in the town of Walters; that the city of Vicksburg has continuously collected taxes, on the area so taken in, from the year 1910 to date; and that the property thus appropriated from the town of Walters was liable for the debts of the said town; and that the complainant has a lien thereon for its debt.

The prayer of the bill is that complainant be awarded a personal decree against the city of Vicksburg for the full amount of said judgment, with interest and costs, or, if mistaken in this, that a master be appointed to ascertain and report the proportional part of the taxable lands formerly embraced in the town of Walters, now situated in the city of Vicksburg, and that a decree be awarded complainant for such part of its judgment as shall be found to be in proportion to the territory so taken in by Vicksburg, and that the mayor and board of aldermen be required to levy and collect a special tax upon the property now in the defendant city that was formerly a part of the town of Walters; and for general relief. A general demurrer was interposed to the bill, and by the court sustained. From the decree dismissing the bill, appellant brings this appeal.

It is the contention of appellee that the first ordinance of December, 1909, was utterly void because it undertook to incorporate into the city of Vicksburg a strip of territory wholly incorporated in the town of Walters; that no statute authorizes such a proceeding, and that the effort to appropriate a part of the territory of Walters falls under the condemnation of a prior decision of this court. *Gandsi* v. *Seminary*, 95 Miss. 315, 48 So. 908. In this case our court, construing section 3301, Code of 1906, as amended by the Laws of 1908, chapter 186, said:

"Section 3301 of the Code, and the other cognate sections in said chapter 99 on municipalities, provide alone for power in a municipality to incorporate, by extension of its limits, adjacent unincorporated territory. Those sections nowhere look in any of their provisions to any grant of power to an existing municipality to extend its territory over the territory of another municipality and thus absorb it. . . . The result is that the ordinance of Seminary is void, the absorption of Gandsi by Seminary is a nullity, and the judgment is reversed and the suit dismissed."

Appellant, on the contrary, attempts to discriminate the present case from the case of *Gandsi* v. *Seminary,* on the ground that the inhabitants of Gandsi were unwilling to be annexed to the town of Seminary; that in the present case the inhabitants of Walters have raised no objection to the first ordinance of the city of Vicksburg, but, on the contrary, the taxpayers interested in the territory taken in by Vicksburg have paid all taxes imposed by the municipal authorities of Vicksburg; and that the city of Vicksburg is now estopped to question the validity of its own ordinance.

In determining the rights of complainant, it should be observed that there has never been any concerted effort on the part of the city of Vicksburg and the town of Walters to consolidate. The proceeding here under review is therefore not in accordance with that portion of section 3301, Code of 1906, outlining the method whereby two or more cities or towns may "combine into or become one municipality." Our court, in the Gandsi Case, expressly ruled that the latter portion of section 3312, Code of 1906, as amended by the Laws of 1908, chapter 187, wholly failed to give power to one municipality to reach out and appropriate the territory embraced in another municipality, "as a simple inspection of section 3312 clearly demonstrates." It could not be said that the city of Vicksburg intended to take in a strip of incorporated territory, because in the caption of the very ordinance it is declared to be one "to enlarge the boundaries of the city of Vicksburg by adding thereto adjacent unincorporated territory." While the bill does not expressly so aver, it is manifest that the municipal authorities were ignorant of the fact that the Fort Hill territory was wholly within the confines of the town of Walters. It is true that an ordinance was passed January 1, 1917, to make effective that which had been merely an abortive attempt to embrace the Fort Hill territory, but when this last ordinance was passed the Fort Hill territory had been

released from the town of Walters nearly seven years. This, then, is not a case of consolidation.

The city of Vicksburg never intended to trespass upon the territory of the town of Walters, to appropriate any of its territory, or assume any of its debts. How, then, can the defendant city be held personally liable for the complainant's judgment? The case of *Horner* v. *Coffey,* 25 Miss. 434, expressly held that the inhabitants of a municipality were not parties to a cause of action against the municipal corporation, and that the only jurisdiction which the corporation had to compel the inhabitants to discharge the obligations of the corporate authorities was to impose and collect such taxes as are expressly authorized by the charter under which the town is incorporated. Vicksburg operates under a special charter, but whether under a special charter or under the Code chapter on municipalities, it has not been delegated with the authority to impose a tax for the town of Walters, or for payment of the obligations of the town of Walters. It is elementary that taxes must be equal and uniform. How could the mayor and board of alderman of the city of Vicksburg impose a tax on the Fort Hill territory and not upon all of the taxable property of the city of Vicksburg? The case here must fail for want of power in the municipal authorities of the defendant city. The argument that the last clause of section 3310, Code of 1906, gives to the complainant a lien upon the property heretofore embraced in the town of Walters, is persuasive. The statute says:

"But such dissolution shall not relieve the property theretofore liable from the debts of the municipality."

But the statute makes no provision for enforcing the claims of creditors, and it may be that the complainant has no remedy except in a court of equity. This is not a suit by the complainant against the former officers or inhabitants of the town of Walters to impress a lien upon the taxable property heretofore liable for the

debts of said town. This is not a challenge to a court of equity to supply a remedy for an acknowledged right, under circumstances where there is no remedy at law. This is a straight suit against the city of Vicksburg, and an offort to hold the municipal corporation of Vicksburg personally liable. If this were a suit against a corporation rechartered and reconstructed upon the old site of the town of Walters, the case would probably be ruled by *Ross* v. *Wimberly,* 60 Miss. 345. In the case last named, the town was "reincorporated with the same name and substantially the same powers as before."

It is a matter of regret that our statutes authorize the abolition of a municipal corporation without exacting the payment of its debts as a condition precedent, or without making adequate provision for the levying of a tax to pay the remaining debts of the defunct corporation. If such proceeding is to be tolerated, what will become of of the large bonded indebtedness of the municipality that prefers repudiation and surrender of its charter in preference to a long and hard struggle to free itself from debt? But this is a subject more for the legislature than for the courts. Confining this opinion strictly to the case made by the bill, the demurrer was properly sustained.

*Affirmed.*