CITY OF PASCAGOULA *et al. v.* KREBS *et al.*[*]

(In Banc. Oct. 1, 1928.)

[118 So. 286. No. 26500.]

.*Corpus Juris-Cyc References: Judgments, 34CJ, p. 528, n. 14; Motions and Orders, 42CJ, p. 560, n. 88; Municipal Corporations, 43CJ, p. 118, n. 43; p. 136, n. 96; p. 137, n. 11, 12; Statutes, 36Cyc, p. 1001, n. 21.

*H. B. Everitt,* for appellants.

*H. P. Heidelberg,* for appellees.

*Ford, White, Graham & Gautier,* for appellees.

Argued orally by *H. B. Everitt,* for appellant, and *H. P. Heidelberg,* for appellee.

McGowen, J. E. E. Krebs and a number of others, filed two bills in the chancery court of Jackson county, seeking an injunction against the appellant the city of Pascagoula to prevent the enforcement of its ordinances and its collection of taxes in territory owned by them, which is described in the bills. These bills were of like tenor and effect, and the cases were tried together. The main object of the bill was to prevent the sale of lands for taxes, and the collection of back taxes for six years, and the imposition of future taxes under certain ordinances. The record discloses the following facts: The village of Eastside was incorporated in the year 1894, and embraced certain territory containing lands, of which complainants in the court below, appellees here, are now the owners.

On March 11, 1902, the boundaries of the village of Eastside were extended so as to embrace additional territory not here involved, and, by proclamation of the Governor, the original village, with the added territory, was declared to be a town. The municipality of Eastside functioned from 1894 until 1916, when, by constituted

authority, the municipality of the town of Eastside was abolished. During the time that the municipality of Eastside was in existence, its officers levied taxes, and it had and maintained its schoolhouses, exercised jurisdiction over its streets and bridges, and furnished police protection. At the date the village of Eastside came into existence, there then existed near to, but not abutting, two municipalities, the town of Pascagoula and the city of Scranton. Pascagoula was situated on the sea coast on the east side of Pascagoula river; Scranton being on the west of the territory involved in this controversy. Neither Pascagoula nor Scranton originally had embraced within its limits any part of the town of Eastside.

On October 7, 1902, the city of Scranton passed ordinances enlarging its territory, and purporting to embrace within its limits certain territory northward and eastward thereof.

On the 4th day of November, 1902, Pascagoula extended its limits northward to the township line between townships 7 and 8, which included lands of the complainants situated in the town of Eastside.

Thereafter, on the 1st day of March, 1904, by ordinances passed by each municipality, the city of Scranton and the town of Pascagoula attempted a consolidation, and, in the description of the consolidation, fixed their lines, or attempted to do so, so as to include the territory in dispute here, a part of the town of Eastside. The consolidation was approved by the Governor by proclamation on July 13, 1904; and thereafter, on January 31, 1912, the legislature passed an act (chapter 393, Laws of 1912), legalizing and validating the ordinances of consolidation of the town of Pascagoula and the city of Scranton. All of these ordinances, as well as the act of 1912, contain the same description of the proposed territory. From the time of the merger of Scranton and Pascagoula until the village of Eastside ceased to exist, there was no effort on the part of the city of Pascagoula

to exercise any jurisdiction whatever over the territory in dispute, and, after Eastside was dissolved in 1916, the inhabitants of the territory sent their children to county schools, the county maintained their roads and bridges, and furnished such police protection as they had, until the year 1925, when the city of Pascagoula, after having a survey of some kind made, for the first time, discovered that the territory included in the town of Eastside, part of which is the property of the complainants in the court below, was within the proposed calls of the description of the municipality of Pascagoula. It does appear that some taxes were levied on nonresidents prior to that time by the city of Pascagoula. In 1925, when this survey was made, monuments were constructed to the north boundary, and thereupon the city of Pascagoula first caused to be assessed all that territory in the town of Eastside south of the township line.

It appears that Krebs, alone of all these residents, at one time in 1904 was assessed with taxes. His seems to be an isolated case, for no effort was ever made to disturb possession or enforce collection.

The answer of the city of Pascagoula put in issue the allegations that the territory here in this controversy was in the village of Eastside, and also put in issue the conclusions of law of the pleaders in the original bill that the proposed extensions and consolidations, in so far as this territory was concerned, were void; but in the briefs and record, there is no contention but that we have set out the facts correctly, that the lands of these complaining people were within the town of Eastside at the time of the consolidation, and at the time the ordinances affecting this case were passed, and that the town of Eastside did not agree thereto. In fact, it does not seem that anybody in authority knew that this merger of Eastside into the municipality had been accomplished.

After the proof had been taken, the cause was delayed and, while under advisement, on February 25, 1926, the

legislature of the state passed an act seeking to legalize, validate, and make certain the consolidation of the city of Scranton and the town of Pascagoula, and to fix the boundaries of Pascagoula; said act being chapter 505, p. 89, of the Local & Private Acts of 1926. In this act, for the first time, it is agreed by counsel, there was an accurate description of the boundary line, and for the first time it is conceded that there is an accurate description of the boundary line of Pascagoula in so far as that boundary line affects the territory here in dispute.

It was contended in the court below, and urged here, that the description was void, because the description referred to government sections of land, which are regular and uniform sections, which do not appear on the government plat filed by the Surveyor General of the United States in the chancery clerk's office in Jackson county, but said plat of said township shows that the sections, Spanish concessions, were of irregular size and shape, and were not regular government sections of six hundred and forty acres each. One of these sections in particular contained more than one thousand two hundred acres, and all of them were of irregular size and shape.

After the act of 1926 was passed the chancery court permitted the city of Pascagoula to amend its answer and plead the passage of this act as effectual to dispose of this suit in its favor. The chancellor, by his decree, held that the description of the boundaries set forth in the various ordinances affecting this matter was void, and that said description in the laws of 1912 was void, and further held that the act of 1926, defining the boundaries of the city of Pascagoula, was sufficient to fix and define the boundaries of said city so as to include therein the territory in dispute as and from the date of approval of said act. The decree recites further as follows:

"But the court being of the opinion that, while said act is in all things valid for fixing and establishing such

boundaries, said act is not retroactive for fixing and defining said boundaries as of the date of the ordinances and acts by which the said city was organized by the consolidation of the towns of Scranton and Pascagoula,'' —and then proceeds to decree that the complainant is entitled to the relief prayed for as to all assessments and sales for taxes prior to the year 1926, holding that all assessments for taxes were valid subsequent to the year 1926, and for that year, and that all sales for taxes made for the taxes of 1925 or for any year prior thereto, of property of complainants in the disputed territory, were void, and enjoined any attempt to collect taxes for any year prior to the year 1926.

From the decree enjoining the assessment, levy, and collection of taxes prior to 1926, the city of Pascagoula prosecutes an appeal here, and, from that part of the decree holding the laws of 1926 to be valid, and enjoining the collection of taxes thereafter, Krebs et al. prosecutes a cross-appeal.

The court evidently held the description void under the doctrine announced by this court in the cases of *Goff* v. *Avent,* 122 Miss. 86, 84 So. 134; s. c., 129 Miss. 782, 93 So. 193; *Weston Lbr. Co.* v. *Straham,* 128 Miss. 54, 90 So. 452; and *Lott* v. *Rouse,* 147 Miss. 802, 111 So. 838.

We shall not review, in this opinion, the question whether or not the description was void, for the reason that the case is solvable upon another proposition, and we prefer to rest our conclusion on that proposition, believing, that by so doing the rights of the parties will be properly adjudicated with as little harm to the losing litigant as possible.

From the statement of facts, it will be observed that the city of Pascagoula, as a town and as a city, by its several ordinances, undertook to extend its limits so as to include therein a considerable portion of the territory of the town of Eastside then in existence, functioning as such, and continuing to function for many years there-

after, without any action on the part of the town of East-side, and without its consent, which was void and a nullity. One municipality may not so extend its boundaries as to include another municipality without its consent. In the case of *Gandsi* v. *Seminary,* 95 Miss. 315, 48 So. 908, a case on "all fours" with this in its facts, Judge WHIT-FIELD said: "The said ordinance . . . is void; the absorption . . . is a nullity." In *Fire Hose Co.* v. *Vicksburg,* 117 Miss. 89, 77 So. 911, the court adhered to the rule announced in the *Gandsi case, supra.* In the Vicksburg case, without intending to do so, Vicksburg undertook to extend its territory so as to take in an adjoining municipality. A creditor of the smaller municipality thus encroached upon brought suit against Vicksburg, seeking to hold it liable for a debt of the other municipality, and Vicksburg, by its plea, avoided liability because the territory which it had attempted to take in from the adjoining municipality could not be so taken under the statute. The court held that Vicksburg was not liable for that reason.

It is pressed upon our consideration in answer to the above proposition: First, that the city of Pascagoula was a *de facto* municipality. This territory was a *de jure* municipality, and it is opposed to sound logic and good reasoning to undertake to maintain that a *de facto* and a *de jure* government, of the same class, can be maintained over the same people and territory at the same time. It is an impossible theory. Second, it is insisted that because the Laws of 1902, chapter 103 (section 3301, Code of 1906), provide for the extension of municipal limits, and for an appeal on the part of any person interested, that this ordinance may not be attacked by a taxpayer seeking to enjoin the collection of taxes in a collateral proceeding. We have considered specially the cases of *Sanders* v. *Starkville,* 128 Miss. 742, 91 So. 422; *Adams, State Rev. Agt.,* v. *Lamb Fish Lbr. Co.,* 103 Miss. 491, 60 So. 645; *Dye* v. *Sardis,* 119 Miss. 359, 80 So. 761;

*Morgan* v. *Wood,* 140 Miss. 137, 106 So. 435; and *Liddell* v. *Noxapater,* 129 Miss. 513, 92 So. 631—and it will be found that in each of these cases there was some irregularity in the exercise of a granted power by a municipality, and the irregularity complained of did not render the ordinance a nullity, nor was it because of a want of charter power to accomplish the end therein sought in the several cases. Likewise, in the *Adams* v. *Lamb Fish Lbr. Co. case,* and in the *Sanders* v. *Starkville case, supra,* a taxpayer sought an injunction from the collection of taxes because of a defect in the publication of notice alleged not to have been in accord with the statute. In the case of *Dye* v. *Sardis,* there was an effort to enjoin the issuance of school bonds in a separate school district, and there was no serious contention that the school district did not have the power; the attack being simply because of irregularity in procedure.

Our attention has also been called to 43 C. J., p. 136, sections 107, 108, wherein it is stated that, in an attempt to annex territory to a municipality, the remedy is by injunction, unless there is a statutory remedy provided, in which case, the statutory remedy is exclusive. However, section 109 of the same authority is to the effect that, where the proceeding is void for want of authority or the jurisdiction, the validity may be attacked collaterally.

We think the very question here under discussion is set at rest in the opinion in the case of *Theobald* v. *Deslonde,* 93 Miss. 208, 46 So. 712, wherein the court held the decree ordering a sale of land to be an absolute nullity, and in which Judge WHITFIELD used the following language:

"The brief filed by the learned counsel for the appellants announces a very familiar and elementary rule of law, that these innocent purchasers for value without notice would be protected as against any collateral attack on this decree for the sale of the lands, if such decree

was merely voidable or irregular; but the other principle is equally well settled, to-wit, that, where a decree is absolutely null and void, it is subject to attack anywhere, collaterally or otherwise. We have several times pointed out the distinction between the jurisdiction of a court over the subject-matter generally and the power of a court having jurisdiction over a subject-matter generally to exercise that jurisdiction in a particular way. See, for a full discussion of this subject, the opinion of this court in *Chester Burden* v. *State* [72 Miss. 960], 45 So. 1 [131 Am. St. Rep. 511]. Of course, the chancery court had jurisdiction generally to entertain petitions under Code 1892, section 2205, to sell the lands of minors under the conditions described by that statute; but the exercise of that general jurisdiction, in order to be valid, had to be in conformity with the law as announced in section 2205. Three of the near relatives had to be cited and the court had no power to make a sale at all without conforming to this requirement, and the decree of sale, therefore, when the record itself affirmatively discloses the fact that there was no compliance whatever with this requirement, was a decree beyond the power of the court to enter. It was absolutely null and void; not merely irregular. And so, also, the decree of the court to sell land that did not belong to these minors passed no title whatever, and, for that reason, also, the decree was void. The distinction, as stated in the outset, is between a decree which is merely irregular, and which cannot of course, be assailed collaterally, and a decree which is absolutely null and void, which may be assailed anywhere."

To like effect are statements in the cases of *Harris* v. *State,* 72 Miss. 960, 18 So. 387, 33 L. R. A. 85; *Lake* v. *Perry,* 95 Miss. 573, 49 So. 569; *Ex parte Burden,* 92 Miss. 14, 45 So. 1, 131 Am. St. Rep. 511.

In the case of *Borroum* v. *Purdy Road District,* 131 Miss. 778, 95 So. 679, Judge ETHRIDGE held that, while the record would be consulted, and where it appeared that

the road district organized in Alcorn county extended, as proposed and adopted in the description, into the state of Tennessee, the board having exercised its jurisdiction and undertaken to incorporate in the road district land in another state, its action in that behalf was beyond its power, and was void, and could be attached collaterally, and that the district within the state could not be maintained; it having been organized beyond the state line and out of some territory over which the board of supervisors had no jurisdiction.

In the case of *Bryant* v. *Board of Supervisors of Yalobusha County,* 133 Miss. 714, 98 So. 148, wherein there was a proceeding to establish a separate road district, and the petition included part of section 6, etc., lying north of the Scuna river, it was held that the board of supervisors had no jurisdiction to include in the district all of section 6, when the facts showed that part of section 6 lies south of the Scuna river, and that the order of the board of supervisors was void, and subject to attack in the validation proceedings to validate the bond issue thereunder. Therein Judge SYKES used the following language:

"Likewise, if the territory included be greater than that petitioned for, the order of the board would be void, because the order does not conform to the petition, and also because the board is attempting to include within the district territory over which it has not acquired jurisdiction"—citing *Evans* v. *Wright,* 126 Miss. 703, 89 So. 226; *De Soto County* v. *Weatherford,* 114 Miss. 259, 75 So. 114, and *Craft* v. *De Soto County,* 79 Miss. 618, 31 So. 204.

The court also held further that Bryant should have been permitted to prove that a part of section 6 lies south of the Scuna river.

In the case at bar, this court is committed to the proposition that an effort to include the town of Eastside without its consent within the city of Pascagoula, as extended,

was void, and a nullity, and we are also committed to the proposition that one who is affected by a proceeding which is null and void may resort to injunction to protect his property rights, even though he had a right of appeal in the first instance and did not·avail himself of it. A decree, order, or judgment, absolutely null and void, may be assailed anywhere, when it is sought to impose such void order or decree upon one who is injured thereby. In this case, it would be an anomalous situation, under the case of *Fire Hose Co.* v. *Vicksburg, supra,* if Krebs had sued the city of Pascagoula for some liability accruing because of a debt owed him by Eastside, and Pascagoula had avoided his suit, however just, for the simple reason that Eastside had been included without authority, and then, when the city of Pascagoula undertook to take money and impose a lien on the lands of Krebs, he must submit to this imposition because he cannot attack a void ordinance collaterally. To so hold would be unfair, unjust, and not within the spirit or true meaning and intention of justice.

The act of 1912, in undertaking to validate and breathe life into a dead, inanimate ordinance of Pascagoula, is abortive and void, for the reason that the extension of corporate limits is a charter power. In fact, the most necessary requisite to the grant of a municipal charter is that there shall be a designated area inhabited or populated by human beings. The proposed extension and consolidation were amendments to the charter of the city of Pascagoula. It was a local and private act, and there was no effort to make it apply to anybody else in the state, save to the one municipality. The fundamental law of the state forbids this. We might only quote section 88 of the Constitution, which so plainly applies to the case at bar as to render unnecessary the lengthening of this opinion. It is as follows:

"The legislature shall pass general laws, under which local and private interests shall be provided for and protected, *and under which cities and towns may be char-*

*tered and their charters amended,* and under which corporations may be created, organized, and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment.''

As we have said, this proposed extension was by an amendment of the charter of Pascagoula, and was a special law; no such authority being given any other municipality.

To hold that this act is valid as being curative would be to ignore section 88 of the Constitution. This we decline to do. We cannot lend our approval to the passage by the legislature of local acts to amend charters of municipalities so long as section 88 remains in the Constitution.

What we have said with reference to the law of 1912 applies with equal force to the laws of 1926, cited *supra*. The chancellor correctly held that it was not curative. It could not be, because the legislature could not pass an act defining the boundaries of Pascagoula by a local act. The authority to amend the charter must be given by a general act. The effort in this case was unconcealed to create municipal boundaries of a single municipality by name. The laws of 1926 were null and void as violative of section 88 of the Constitution.

The injunction should have been perpetual, enjoining the city of Pascagoula from enforcing its void ordinance in the future, as well as in the past.

It follows from what we have said that we have reached the conclusion that we must affirm upon the direct appeal, and upon the cross-appeal the case will be reversed, and the decree will be entered here perpetually enjoining Pascagoula from enforcing the ordinance hereinbefore referred to upon the disputed area property holders, the appellees.

Affirmed on direct appeal, and reversed on cross-appeal, and decree entered here for cross-appellants.

*Affirmed.*
*Reversed.*