DYE ET AL. *v.* MAYOR ET AL.

[80 South. 761, Division B.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Organizations. Collateral attack.*

Where a town has been created a separate school district by legislative authority and as such becomes an instrumentality of the government for school purposes, being a governmental arm of the state, the legality of its organization cannot be inquired into or attacked collaterally in a proceeding to enjoin the issuance of district school bonds.

2. SCHOOLS AND SCHOOL DISTRICTS. *Bond elections. Qualification of voters.*

Where complainants sought to enjoin the issue and sale of district school bonds on the ground of the illegality of the election authorizing the issuance of bonds, failed to show that any person was permitted to vote who was not a *bona-fide* resident of the school district and otherwise duly qualified as a voter, in such case the petition will be dismissed.

3. SCHOOLS AND SCHOOL DISTRICTS. *Bonds. Election. Legality.*

Where in a suit to enjoin the issuance of bonds authorized by an election, complainants failed to show that the result of the election would have been against the bonds in the event certain voters had not been permitted to vote in the election and there was no charge of fraud and the election was not contested. In such case, the complainants failed to make out their case.

APPEAL from the chancery court of Panola county. HON. J. G. McGOWEN, Chancellor.

Suit by W. T. Dye and others against J. L. Brewton and others, as Mayor and Board of Aldermen of the Town of Sardis, seeking an injunction against the issu-

ance and sale of bonds of the Sardis separate school district.    From a decree dismissing the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*Geo. M. Johnson* and *Jas. Stone,* for appellant.

It must be admitted that any separate school district is a *quasi*-public corporation which corporation is invested with certain powers and authority, and that said *quasi*-corporation derives all of its power through and by legislative acts enacted by the legislative department of the state.    It must also be admitted that it has been universally held in other states that only *quo warranto* or action in the nature of same can the legality of the organization be inquired into but after dilligent search counsel have not been able to find a single decision from this court.

The county school board is a court of limited jurisdiction.    Every member of that board is presumed to have known the law.    By act of legislature of 1890, chapter 281, the limits for school purposes was extended to include four sections of land, of which the original town was the geographical center.    By ordinance passed by mayor and board of aldermen the town limits was withdrawn to be a mile square which authority we think the board has as to the town limits or exercising its police powers but that such an ordinance did not disturb the then already organized Sardis separate school district, nor was it within their power to disturb same as this power was vested upon organization in the county school board under lmited powers. No territory can be added to an already established municipal school district unless the territory proposed to be added lies adjoining such municipality.    (Sec. 4533, Code of 1906.)

The court in *Wallace* v. *State ex rel. Tucker* reported in 104 Miss. 162, 83 So. 61, said: "for the reason that

section 4533 of the code provides a complete scheme by which adjoining territory may be added to a separate school district."

This court in *Jones County* v. *Grisson et al.,* reported 97 Mis.. 193, 52 So. 629, said: "The only exception to this is found in section 4533 of the code. This last section (that is 4533) allows separate school districts to be created out of 'any part of a county adjoining a municipality which is a separate school district,' to be included in such district, when a petition is filed for this purpose."

It is contended for the appellees that the county school board was a court of competent jurisdiction and upon petition as presented asserting that such territory was adjoining said municipality or town of Sardis when as a matter of law such territory was not adjoining the municipality of the town of Sardis but was adjoining the Sardis separate school district as established by the legislature, could not confer jurisdiction on said limited court of limited jurisdiction. These facts we contend the county school board should have taken judicial knowledge of and if they failed then we contend that when an attack is made on the issuance of bonds by another body, the mayor and board of aldermen, that the court, assuming jurisdiction, can go into all the facts and decide the whole case. Now we admit the reverse would be if the county school board had the authority to issue bonds as well as to established school districts. In other words it is the contention of the appellants that because of the issuance of bonds a lien is placed on the territory described by such order or ordinance to protect the holders of said bonds and because of the equities involved therein, chancery court had jurisdiction of persons and property and on assuming jurisdiction that such court could inquire in and decide all matters material to this cause. Section 532, Code of 1906; *Bank* v. *Duncan,* 52 Miss. 470; *Georgia R. R. Co.* v. *Brooks,* 66 Miss. 583; and

*Eyrich* v. *Bank,* 67 Miss. 60. In this matter the court refused to go into the facts as to the organization of the separate school district.

The only registration ordered by the mayor and board of aldermen for this election was an order to the clerk to give notice to all persons living outside of the corporate limits of the town of Sardis and within the proposed Sardis separate school district to register. No other registration is necessary to hold an election of this kind. The mayor and board of aldermen acting for the town can at any time they deem necessary issue and sell bonds for improvements and no vote except their vote need be taken unless such bond issue would increase taxation above the maximum allowed under the statute. Surely appellees cannot contend under the facts as shown in this record that there was a registration of any kind. If there was no registration there is certainly no election. (87 Miss. 463.)

For the above reasons set out we most respectfully ask this court to reverse this cause and cause same to be remanded to the chancery court in order that this court might well and truly go into the organization of said separate school district and an organization of a school district which would by judicial act and not by ex-parte petition be established.

Since counsel for appellees has agreed to allow us time within which to file this brief and assignment of error we respectfully ask that if there is any part of this brief that he desires to answer that this court will allow him to do so in order that this court might well and truly have facts and law before its body for final decision.

*F. H. Montgomery,* for appellees.

The Sardis separate school district is a *quasi*-public corporation, and as such it is a part of the governmental arm of the state and is invested with govern-

mental power and authority. It was created by the state acting through the legislative department, and was brought into existence for public and not private purposes.

It derives its franchises from the states and was created for the better regulation and government of local affairs. It is an arm of the state through which the state's government is benefitted and being a part of the sovereignty of the state and exercises public governmental powers and functions, its organization cannot be attacked or inquired into by a private individual whose interests are not distinct from those of other citizens and tax payers.

In such cases the right to institute or inquire into the legality of the organization of the corporation is confined to the state itself in a direct proceeding in the nature of a *quo-warranto*.

This proposition of law is so universally established by the courts of last resort in this country, that an argument is unnecessary to sustain the contention.

I refer the court to the following cases, which fully sustain me in this proposition. *School District* v. *Fremont Co.*, 86 Pac. 24; *A. T. & S. F. R. R. Co.* v. *Wilson*, 6 Pac. 281; *State* v. *Ryan*, 125 Pac. 666; *Shriver* v. *Day*, 114 N. E. 918; *Haynes* v. *School District*, 164 N. W. 887; Nelson v. School District, 164 N. W. 874; *Coffman* v. *School District*, 141 S. W. 132; *City of El Paso* v. *Rubhman*, 46 S. W. 25; *Keweenaw Asso.* v. *School District*, 57 N. W. 404; *State* v. *Ferguson*, 134 N. W. 872; *State* v. *Palmer*, 26 N. W. 469; *Burnham* v. *Rogers*, 66 S. W. 970; *Wood* v. *Calaveras Co.*, 129 Pac. 283; *School District* v. *Chappell*, 135 S. W. 75; *People* v. *Powell*, 112 N. E. 614; *State* v. *Miller*, 88 S. W. 637; *School District* v. *Young*, 133 S. W. 143; *Black* v. *Early*, 106 S. W. 1014; *School District* v. *Cheyenne Co.*, 26 Pac. 43; *School District* v. *School Directors* 28 N. E. 49; *Connive* v. *Smith*, 157 N. W. 450. And this is true, even though it might be successfully contended that the

organization was so defective as to be void in its inception. *Evans* v. *Anderson,* 155 N. W. 1040.

This principle of law is so completely established by the foregoing decision, that I would not undertake to add anything to the decisions of the courts by way of argument. It is very clear from these cases that the complainants in the case at bar had no right in their suit to question the legality of the organization of the district.

In addition to this there is another very satisfactory reason why this contention of the complainants cannot be maintained.

The county school board of Panola county was a court of competent jurisdiction and was invested by the legislature of the state with jurisdiction to hear and determine the petition that was presented to it praying that the territory described therein be added to the Sardis separate school district.

The judgment of the county school board organizing or rather extending the boundary of the Sardis separate school district recites that the petition was signed by a majority of the qualified electors residing in the territory proposed to be added to the district. This is a judicial determination of that question.

Being thus a court of competent jurisdiction its judgment enlarging the boundaries of the Sardis separate school district cannot attack in a collateral proceeding such as the one instituted by the complainants in this case. For authorities sustaining this contention, I cite the following decisions of this court: *Sweatman* v. *Dean,* 86 Miss. 641; *Root* v. *McFerrin,* 37 Miss. 17; *Scott* v. *Porter,* 44 Miss. 364; *Cannon* v. *Cooper,* 39 Miss. 784; *Ward* v. *State,* 40 Miss. 108; *Pollock* v. *Buie,* 43 Miss. 140; *Harper* v. *Hill,* 35 Miss. 63; *Cason* v. *Cason,* 31 Miss. 578; *Weir* v.*Mohaghan,* 67 Miss. 434; *Ames* v. *Williamson,* 72 Miss. 760; *Gillespie* v. *Hammerstein,* 72 Miss. 838.

But notwithstanding the fact that a county school district is a court of limited jurisdiction, when the facts appear upon the face of the record, as they do in this case, its judgment is not open to collateral attack. *School District* v. *Chappell,* 135 S. W. 75.

It is difficult for me to see in the face of the foregoing authorities how it can be seriously contended by the complainants that they have any right to question the organization of the Sardis separate school district. I am entirely satisfied to rest this issue of the case upon the authorities listed above. We come now to a consideration of the question of the validity of the election. The complainants allege that the election is void because certain persons living outside the corporate limits of the town of Sardis, but inside the Sardis separate school district, were permitted to vote when there had been no sufficient registration of these voters. It appears from the evidence in the case that the clerk of the board of aldermen, who was also the registrar of the town of Sardis, was directed by order of the board to register such voters as appeared for registration and who desired to participate in the election, and who lived inside the district but outside the corporate limits of the town. The clerk procured a book upon which he registered all persons presenting themselves for registration and who he decided were qualified electors, and therefore entitled to participate in the election. There is no allegation of fraud upon the part of the registrar or of the voters so registered, and no attempt is made to prove such fraud.

In the case of *McGrane* v. *Nez Perce Company,* 18 Idaho 714, 112 Pac. 312; Ann. Cases, 1912A, page 165, it was announced that if the unlawful acts of the election officer should be held to have the effect of rendering an election void, it would place it within the power of the election officers to disfranchise the entire electorate of the county; prevent its holding a valid and legal election, and would turn a statute designed to safeguard

the election franchise into an instrument of injury and disfranchisement. The general rule is that mere irregularities in registration do not disqualify a voter if he is otherwise qualified, where he has been permitted to vote and no question raised until after the election has been held. 15 Cyc. 307, Paragraph ''H;'' *Pradat* v. *Ramsey,* 47 Miss. 34-36.

In volume 5, Cyc. of Evidence, page 101, the rule is stated in the following language. ''In the absence of any showing of fraud or injury, or unless the law expressly declares the irregularity to be fatal, proof of the nonperformance by the election officials of a mere ministerial act, or if its irregular performance, will have no weight when offered simply for the purpose of setting aside the election.'' *Quinn* v. *Latimore,* 120 N. C. 426, 58 A. S. R. 757.

For other authorities in point, see: *Patton* v. *Watkins,* 90 A. S. R. 46 et seq.; Note to *Suthland* v. *Noble,* Ann. Cas., 1915A, page 1008, et seq.; 15 Cyc., page 308, section 1, and cases cited; *Kerlin* v. *City of Devil's Lake,* Ann. Cas. 1915A, page 624.

But if the court should take the view that the registration of these persons living outside the corporated limits of the town was void, and the persons so registered were not entitled to vote in the election, what will the effect of this be upon the general result declared by the election commissioners, in view of the fact that it is conceded by complainants that one hundred and forty-nine legal votes were cast in the election and only fifty votes alleged by them to be illegally cast. The tendency of the courts is undoubtedly to sustain the result as declared by the election commissioners, unless it is affirmatively shown that the return is false. The rule of evidence in the contest of an election is the same as that in any other civil case; the burden of proof being upon the person alleging the falsity of the return of the election commissioners to establish his case by the preponderance of the evidence. 15 Cyc., 416-418; *Craitz*

*v. Bchensmeyer,* 8 A. S. R. 378; *Tebbe* v. *Smith,* 49 A. S. R. 68; Note to *Boyer* v. *Teague,* 19 A. S. R. 567.

The complainants alleged in their bill that while the return of the election commissioner's showed that a majority of the votes cast in the election favored the issuance of the bonds, in fact a majority of the legal votes cast were against the bond issue. The burden, therefore, was upon the complainants to show that this allegation was true, this being the gist of the complainant's action. But when the evidence in the case is reviewed we find that the most that can be said of the complainants' proof is that certain votes cast in the election were illegal because the electors casting them were not properly registered.

This principle of law is stated in 15 Cyc., page 416, as follows: ''Where the validity of the returns is not attacked on the ground of fraud, it is not enough to show that illegal votes were cast; it must be shown that a sufficient number of illegal votes were cast for the successful candidate to change the result.''

See also. *Tarbox* v. *Asghrue,* 12 Pac. 935; *People* v. *Cicott,* 97 A. D. 141.

The supreme court of Mississippi has gone a step further that the text above cited and in the case of *Word* v. *Sykes,* 61 Miss. 649, held that even where fraud is charged, the burden is always upon the contestant to show both fraud and injury to himself in the conduct of the election and the count of the vote, and that he received the greatest number of legal votes. The possibility that a contestant might have been damnified by irregularities or fraud is not enough, and in the case of *Barns* v. *Pike County,* 51 Miss. 305, it was held that not every illegality in the registration of voters or the holding of an election will invalidate the election unless it is also shown that it would have changed the result. It is necessary that the contestant must show that the irregularities complained of actually did change the result of the election. *Pradat* v.

*Ramsey*, 47 Miss. 24; *Sublet* v. *Bedwell*, 47 Miss. 266; *Lehbach* v. *Haynes*, 54 N. J. L. 77, 23 Atl. 422; *Todd* v. *Steward*, 14 Colo. 286, 23 Pac. 426; 5 Ency. of Evidence, page 129, section 3. Numerous cases cited in notes 53 & 54, page 130; *Wade* v. *Oates*, 20 So. 495; McCrary on Elections (4 Ed.), section 495; 15 Cyc., 419; *Smith* v. *Thomas*, 54 Pac. 671; *Edward* v. *Logan*, 70 S. W. 352; *Moore* v. *Sharp*, 41 S. W. 587; *Todd* v. *Steward*, 23 Pac. 426; *Teabach* v. *Haynes*, 23 Atl. 422; *Edwards* v. *Logan*, 70 S. W. 852; *People* v. *Lycott*, 97 A. D. 141; 2 *Kerling* v. *City of Devils Lake*, 141 S. W. 756; Ann. Cas. 1915C, 624.

On the trial of the case below the complainants relied almost entirely on the decision of this court in the case of *Green* v. *Rienzi*, 87 Miss. 463. In my judgment the decision of this court in the Green case does not substantiate any proposition of law which is an issue in the case at bar. That case decides the sole question that a person must be registered in order to be a qualified voter. This principle is readily conceded by myself; but in no wise affects a decision to be reached in this case.

The qualified electors of the Sardis separate school district have spoken in unmistakable terms in favor of the issuance of the school bonds, and there is not a shadow of doubt as to what the will of a majority of the electors of the school district is on this issue. Therefore, we contend in the language of this court in the case of *Shines* v. *Hamilton*, 87 Miss. 391, that: "When the will of a sovereign people has been so fairly expressed it should control. The court will not countenance for purely technical reasons an overthrow of the result." *Pradat* v. *Ramsey*, 47 Miss. 33.

From the foregoing I submit to the court the following conclusions should be reached in this case.

First, that as a public corporation, the organization of the Sardis separate school district cannot be attacked except in a direct proceeding by the state filed by th

proper state officials; second, that the county school board is a court having jurisdiction both of the subject-matter and the parties in the matter of creating or extending the limits of a school district, and its judgment in extending the limits of a school district reciting jurisdictional facts on its face cannot be collaterally attacked; third, that the failure of the registrar to provide a suitable book for the registration of the voters was an irregularity due solely to the negligence of the official and not of the electors; and the registration having been ratified, approved and acted upon by the registrar, the election commissioners, the voters, and the representatives of the respective sides to the question at issue in the election, such irregularity in the form of registration will not support a contest of the election after the result has been declared; fourth, that if the court should hold that the registration of the voters living outside of the municipality of Sardis was illegal and void, this would only have the effect of rendering such votes as were not properly registered illegal, and that the casting of such illegal votes did not vitiate the entire election. That the burden of the proof was upon complainants to show that a sufficient number of illegal votes were cast in favor of the bond issue to change the result of the election, and the proof failing to show how such illegal votes were cast, the result of the election as declared by the commissioners must stand.

For this reason we insist that the decree of the lower court should be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellants, as complainants in the trial court, sought by their bill in equity to enjoin the mayor and board of aldermen of the town of Sardis from issuing and selling thirty-five thousand dollars of the bonds of the Sardis separate school district. The bill charges that the
119 Miss.—24.

Sardis separate school district is illegally organized, and that the bonds of said district have not been legally authorized in that certain irregularities existed in the holding of the election authorizing the bonds. The defendants answered the bill, and upon issue joined proof was taken, the cause submitted for final hearing and a decree rendered dismissing the bill. The complainants as citizens and taxpayers of the separate school district attempted by this proceeding to show that a majority of the qualified electors residing in the territory added to the separate school district did not in fact join in the petition to the county school board praying that territory be added. They also attempt to show that certain illegal votes were cast in the bond election, in that certain electors were not legally registered. They also contend that two of the judges appointed by the mayor and board of aldermen to hold the election were not legally appointed judges.

In disposing of the present appeal, it is unnecessary to relate fully the history of the Sardis separate school district as originally created and as afterwards enlarged. By an act of the legislature in 1888 (Laws 1888, chapter 293), the municipality of Sardis was constituted a separate school district, and ever since the said town and certain adjoining territory has been operated as a separate school district, owning a school building, and annually levying a tax for the support of the school. In 1917 the mayor and board of aldermen, acting for the Sardis separate school district, planned the erection of a new school building, and for this purpose gave notice of its intention to issue thirty-five thousand dollars of school bonds to erect a building and purchase additional school lands. There was, upon protest, an election upon the question of the issuance of these bonds, and the returns of the election were in favor of the bonds. But the first issue contemplated by the fiscal officers of the district was not in fact issued. It is stated by counsel that in preparing the transcript of

the record of this first issue it was discovered that no proper record had been made of the taking in of fifteen sections of land lying outside of the corporate limits of Sardis. It does appear that in May, 1917, a petition was presented to the county school board asking that certain territory be added to the Sardis separate school district; that this petition came on for hearing before this county school board, and the board entered its order adding the proposed territory. There was no appeal from this order of the county school board.

The mayor and board of aldermen of the town, acting for the separate school district as thus formed, again gave notice of its intention to issue thirty-five thousand dollars of bonds for the erection of the school building and the purchasing of additional lands. There was a counter petition, and upon this protest the board ordered an election. For the purpose of holding the election the board appointed three managers of the election, and the election was held upon the day fixed, the votes canvassed and the result declared in favor of the bonds. Thereupon followed the present litigation.

The contention is made, and correctly so, we think, that the Sardis separate school district has been created under legislative authority, and as such becomes an instrumentality of the government for school purposes; that being a governmental arm of the state, the legality of its organization cannot be inquired into or attacked in the present proceeding. The bill in this case presents purely a collateral attack upon the organization of the district. As stated in Am. & Eng. Enc. of Law (2d Ed.), vol. 25, p. 34:

"The regularity of the formation and organization of a school district cannot be called in question in a merely collateral suit."

This question has been many times presented to the courts of other states and the point ruled adversely to the contention made by the complainants in their bill.

In *Stewart* v. *School District,* 30 Mich. 69, the court, by Cooley, J., well observes:

"If every municipality must be subject to be called into court at any time to defend its original organization and its franchise at the will of any dissatisfied citizen who may feel disposed to question them, and subject to dissolution, . . . or to be crippled in authority and power if defects appear, however complete and formal may have been the recognition of its rights and privileges, on the part alike of the state and its citizens, it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or overtechnical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment, and mischief."

This language of the supreme court of Michigan was quoted with approval by the supreme court of Wyoming in *School District No. 21* v. *Board of Commissioners,* 15 Wyo. 73, 86 Pac. 24, 11 Ann. Cas. 1058. Paragraph 2 of the headnotes of the case mentioned (86 Pac. 24 [15 Wyo. 73, 11 Am. Cas. 1058]) states the conclusion there reached by the court, and indicates clearly the general rule as follows:

"For the purposes of a suit to enjoin payment of a special school tax to a school district, the district must be presumed legally organized and existing, as its existence can be inquired into only in direct proceedings."

In *State* v. *Ryan,* 41 Utah, 327, 125 Pac. 666, the principle was applied to the extent of denying a resident and taxpayer the privilege of bringing an action of *quo warranto* to test the legality of a school district when the attorney general had refused to institute the proceedings; the court saying:

"Such a corporation is, nevertheless, one that is created by the laws of this state, and is an arm of the state through which the state government, to some extent at least, is benefited. What right has a private

individual, without some special interest, to rush into the courts of the state, and ask to dissolve governmental agencies of the state? Although the organization of such an agency may be very irregular, yet the state, whose agent it is, for very good and sufficient reasons, may not desire the agency to be dissolved.''

In *El Paso* v. *Ruckman,* 92 Tex. 89, 46 S. W. 26, the court, by GAINES, C. J., said:

''The rule is well established that when the creation of a public corporation, municipal or *quasi*-municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding.''

This language was quoted with approval in *Coffman* v. *Goree Independent School Dist.* (Tex. Civ. App.), 141 S. W. 132. This subject was considered and conclusions in harmony with the present holding announced in the following cases: *People* v. *Powell,* 274 Ill. 222, 113 N. E. 614; *Connine* v. *Smith,* 190 Mich. 631, 157 N. W. 450; *Shriver* v. *Day,* 276 Ill. 403, 114 N. E. 818; *Wood* v. *Calaveras,* 164 Cal. 398, 129 Pac. 283. Other cases in point are cited in the briefs.

There can be no contention in this case that the creation of the Sardis separate school district is a nullity. Regardless of any attempt, however futile, to add outlying territory, the municipality of Sardis was originally created a separate school district, and certainly the territory embraced within this municipality has continued to be a separate school district. The mayor and board of aldermen, acting for the district, are now attempting to issue and sell the bonds of the district as such, and certainly it cannot be contended that no district at all exists. The learned chancellor held that it was incompetent to attack the district in the present proceeding, and his ruling on this point is accordingly affirmed.

There is a further contention that the bond election is void because certain persons living outside of the town of Sardis, but within the separate school district, were permitted to vote without being properly registed. The clerk of the board of aldermen was directed by order of the board to register those voters who lived within the district but outside the corporate limits of the town, and who desired to register and participate in the election. In doing this the clerk, it appears, procured and used a blank book upon which he registered all persons duly presenting themselves for registration, and whom he decided were qualified electors and entitled to participate in the bond election. There was an effort to show that this registration was irregular in that the proper books were not used by the clerk and the proper oath administered. Those favoring and those opposed to the bond issue took part in the election. Many of the voters were challenged, but it seems that the legality of the registration was not raised until the present litigation. There was no showing that any of the voters who registered and took part in the election were not qualified electors under the general election laws of the state. On the contrary they were duly registered in the county, and were qualified generally as voters, and the election officers had before them the regular municipal and precinct registration book as well as the special registration. Complainants failed to show that any person was permitted to vote who was not a *bona-fide* resident of the Sardis separate school school district and otherwise qualified generally as a legal voter. They also failed to show that the result of the election would have been against the bonds in event certain voters had not been permitted to participate in the election. There is no charge of fraud, and the returns of the election were not contested except by the present bill. It follows that under the facts and circumstances shown by the present record complainants utterly failed to make out a case.

There is no merit in any ground of attack presented by the bill. The purposes of the present bond issue are laudable and worthy. The old schoolhouse has served well its day; it stands now as silent but sure evidence of the mutability of nature. Its walls, streaked and scarrel by time and the mischievous assaults of the irrepressible school boy, must fall before a modern and more commodious building.

On all points raised, the decree of the learned chancellor is affirmed.

*Affirmed.*