### BORROUM *et al. v.* PURDY ROAD DIST.

[95 South. 677. No. 23338.]

HIGHWAYS.— *Creation of road district by board of supervisors where juris-dictional facts recited in the record cannot be collaterally attacked; order of board of supervisors creating road district lying partly' beyond state void and may be collaterally attacked; where order' of board of supervisors creating road district void, court cannot enter new order changing or limiting district.*

In a proceeding to validate bonds under chapter 28, Laws Ex. Sess. 1917, the validity of the creation of a road district cannot be inquired into if the record before the board shows the jurisdictional facts in so far as matters of fact are concerned. Where the' record shows or recites the jurisdictional facts, the order of the board has all the effect of a court of general jurisdiction and cannot be attacked except by direct appeal. But where the board exceeds its territorial jurisdiction, and part of the district created lies beyond the state, its order is void, and this may be shown in a collateral proceeding. In such case the court cannot enter a new order changing the district or limiting it to such territory as lies within the county or state. A district must stand or fall as it is created by the board.

Appeal from chancery court of Alcorn county.
HON. A. J. McINTYRE, Chancellor.

Suit by Theodore Borroum and others against Purdy Road District. From a decree for defendant, plaintiffs appeal. Reversed and rendered.

W. J. LAMB, for appellants.

The board of supervisors is a court of limited and special jurisdiction and only has such authority and jurisdiction of matters as is given them by law, and that the jurisdictional fact that twenty per cent of the qualified electors of the district had signed the petition is not shown by the petition, or in any other way, and therefore their order declaring the proposed district is nugatory and void. The basis of their entire proceedings is bound to be founded and determined by the petition, and without the petition giving them the authority, they have no right to act in the matter, and it was the duty of the board for the protection of the rights of citizens to ascertain that twenty per cent of the qualified electors had signed the petition, and the board had no authority or power to act until this fact had been established, which is not established in this case either by the petition or proof otherwise, and there is no presumption by law in favor of the truthfulness of the petition containing twenty per cent of the qualified electors, nor is there any presumption in favor of the validity of their order based on this petition, but in fact the law says the presumption is against it. · *Bolivar County* v. *Coleman,* 71 Miss. 835; *Byrd* v. *State,* 1 How. 163; *Root* v. *McFerrin,* 37 Miss. 17; *Scott* v. *Porter,* 44 Ib. 364.

Now, there is nothing in this record to show, when the order was passed, that the board of supervisors had any authority whatever to pass this order, nor can there be any presumption of law or fact that they had the authority to pass this order. *Garner* v. *Webster Co.,* 79 Miss. 565; *Bolivar Co.* v. *Coleman,* 71 Miss. 832, 15 So. 107; *Root* v. *McFerrin,* 37 Miss. 17, 75 Am. Dec. 49; *Ballard* v. *Davis,* 31 Miss. 525; *Marks* v. *McElroy,* 67 Miss. 545, 7 So. 408; *Craft* v. *DeSoto Co.,* 79 Miss. 618, 7 Enc. L. & Prac. 467, et seq; 12 Am. & Eng. Ency. Law, 271; *White* v. *Railroad Co.,* 64 Miss. 566, 1 So. 730; *Board* v. *Allen,* 60 Miss. 93; *Madden* v. *Railway Co.,* 66 Miss. 258, 6 So. 181.

In the case at bar we think we can safely say, as was said in the opinion of the court, *supra,* that there is nothing in the record to show that twenty per cent of the qualified electors signed the petition. It is true that the board of supervisors said so in their order, but their order is based on the petition and the petition does not show that twenty per cent of the qualified electors signed the same, nor was there anything before the board of supervisors to show that twenty per cent of the qualified electors had signed the petition, which fact is not shown by the petition or in any other way.

The board in this case was exercising a naked statutory power, and it was necessary that the proceedings of the board must show upon their face strict conformity with the statute conferring this power, and the want of such conformity rendered their acts and doings nugatory and void. *State* v. *Morga,* 79 Miss. 659; *Ferguson* v. *Monroe, Co.,* 71 Miss. 524.

The board could not look to the petition alone, or at all, for the necessary jurisdiction of facts, and there is nothing in this record to show that twenty per cent of the qualified electors signed the petition. *Jefferson Co.* v. *Grafto,* 74 Miss. 442.

In view of these facts and the law as cited above, we respectfully submit that the court erred in entering its decree in this case, and the objections ought to have been sustained. The board undertook to operate, as is set out in the petition, under the provisions of chapter 176, of the Acts of 1914, and of amendments thereto, including chapter 277 of the Acts of 1920. Chapter 277 of the Acts of 1920 undertakes to amend section 176 of the Acts of 1914. We contend that chapter 277 of the Acts of 1920. are unconstitutional and void.

Section 71 of the Constitution provides: "Every bill introduced in the legislature shall have a title and the title ought to indicate clearly the subject matter or matters, of the proposed legislation, etc."

An examination of the Acts of 1920, chapter 277, shows that it is in direct conflict with this clause of the Constitution. *Levee Commissioners* v. *Insurance Co.,* 96 Miss. 832. A comparison of chapter 277, Acts of 1920, with chapter 176 of 1914, the court will see that sections 2, 3, 4, 5, 6, 7, 8, 10, 13 and 17, are all changed and amended, the Laws of 1914, chapter 176, and no reference whatever is made to any of these sections or paragraphs in chapter 277 of the Acts of 1920, and in addition to these changes in the acts of 1914, the Acts of 1920, chapter 277, contains three additional sections more than is contained in the chapter 176 of the Acts of 1914, making an entirely new and different law. We would set these changes all out for the court, but the changes can be readily seen in a comparison of the two statutes.

Now, as we said above, the Acts of 1920, chapter 277, are either unconstitutional because of section 71 of the Constitution, or else it entirely repeals chapter 176 of the Acts of 1914, and as the petition in the case at bar was based on chapter 176 of Acts of 1914, then there was no such law in existence for the same to be based on. *Levee Commissioners* v. *Insurance Co.,* 96 Miss. 834.

If the law makers desired to amend or change any of the sections of chapter 176 of the Acts of 1914, then under the authorities cited above it was their duty to so specify, and it has been decided by this court that the provisions in section 71 of the Constitution are mandatory. *Sample* v. *Town of Verona,* 94 Miss. 264. In addition to the above, we have chapter 207 of the Acts of 1920.

The court will see that chapter 207 of the Acts of 1920, is a a general law, and it specifically provides that all acts and parts of acts in conflict with this act are hereby repealed. There can be no question but what chapter 176 of the Acts of 1914, and chapter 277 of the Acts of 1920, are in conflict with this act, and under section 6 of chapter 207 these other two acts are expressly repealed. Chapter 207 of the Acts of 1920 makes no reference to repealing any other act or amending any, but becomes a

general law and by its own terms repeals everything in conflict with the same, and is a general law providing for a uniform method and plan for the issuance of bonds, and being a general enactment, the legislature intended to repeal all laws in conflict therewith. In the case of *Bascot, et al.* v. *Board of Supervirors of Hinds Co.*, 124 Miss. 263, this court has held that chapter 207 of the Acts of 1920 is a general law. *Rosenstock* v. *Washington Co.*, 85 So. 91; *A. H. & S.* v. *LeFlore Co.*, 85 So. 198.

There can be no question but what chapter 207 of the Acts of 1920, takes precedence over chapter 277 of the Acts of 1920, because chapter 207 was approved and became a law on April 2, 1920, and chapter 277 was approved and became a law on March 26, 1920. In conclusion, on this subject we wish to say that chapter 207 of the Acts of 1920, repeals all laws in conflict with that act, and is the general scheme by which bonds can be issued, and that the board of supervisors in this case was operating and acting under a law that was not in existence and that had been repealed, and we respectfully submit that its acts and doings were illegal and void.

In view of these contentions, we respectfully submit that the court erred in entering its decree in this cause, and that the objections should have been sustained.

*W. C. Sweat*, for appellee.

The record of the board of supervisors shows that it found all jurisdictional facts to exist. No appeal was prosecuted from any of its orders issuing these bonds; and this is a collateral attack on the orders of the board of supervisors issuing these bonds.

The board of supervisors, by section 170 of the Constitution, is vested with full jurisdiction over roads, ferries and bridges. Since this bond issue was made for the purpose of constructing roads, the board of supervisors, in passing its orders, were exercising a jurisdiction which was vested in it by the Constitution—a full and exclusive jurisdiction in which no other court, either by the Constitution or by the statutes of the state, had any authority to act. The

board of supervisors exercises a jurisdiction which this
court has consistently held that the legislature can in no
manner divest or impair.  *Board of Supervisors* v. *Arrighi,*
54 Miss. 668; *Paxton* v. *Baughn,* 56 Miss. 631; *Seal* v.
*Donnelly,* 60 Miss. 658; *State* v. *Bolivar County,* 111 Miss.
867, 72 So. 700; *Holmes Co.* v. *Black Creek Drainage
Dist.,* 99 Miss. 739, 55 So. 963.    The record in this case
shows very clearly all the jurisdictional facts.

All jurisdictional facts appearing on record, the orders
of the board are conclusively presumed to be correct; and
the exclusive remedy of these opposing the bond issue
was by appeal to the circuit court.    Chancery court has
no jurisdiction whatever in these matters.    None was con-
ferred upon it by the statute and by the Constitution; and
the only manner in which the chancery court can have any
jurisdiction at all would be to declare that these orders
of the board were void in the event the record failed to
show that the board had acquired and exercised its proper
jurisdiction.    In other words, if the record shows on its
face that the orders of the board were void, then the
chancery court would have jurisdiction to so declare, and
enjoin the issuance of bonds; but with proper jurisdiction
appearing in the face of the record, as it does in this case,
a collateral attack cannot avail anything.    *Liddell, et al*
v. *Municipality of Noxapater,* 129 Miss. 513, 92 So. 631;
*Dye, et al.,* v. *Town of Sardis,* 119 Miss. 359; *Johnson* v.
*Yazoo City,* 113 Miss. 449; *Wolford* v. *Williams,* 110 Miss.
637; *Hinton* v. *Perry Co.,* 84 Miss. 546; *Lemon* v. *Peyton,* 64
Miss. 161; *Canton* v. *Cooper,* 39 Miss. 784; *Ferguson* v.
*Board;* 14 So. 83; *Scott* v. *Porter,* 44 Miss. 364; *Wright,
et al.* v. *Edwards Hotel & City Ry. Co.,* 101 Miss. 470,
58 So. 332; *Liddell, et al.* v. *Municipality of Noxapater,
et al.,* 129 Miss. 513, 92 So. 633; *Johnson* v. *Yazoo County,*
113 Miss. 449; *Hinton* v. *Perry County,* 84 Miss. 544.

It is urged by the appellant in this cause that the board of
supervisors is a court of limited jurisdiction; and as such,
under the law, the presumptions are all against the valid-
ity of its orders.    This can make no difference when the
jurisdictional facts are found to exist by the board, as

was done in the case at bar; and its orders and judgments have all the effect of the judgment of a court of general jurisdiction, and can only be questioned by appeal or *certiorari,* and this is expressly held in the case of *Johnson* v. *Yazoo County, supra.    Vicksburg Grocery Co.* v. *Brennan,* 28 So. 845; *Martin* v. *Miller,* 103 Miss. 754; 60 So. 772; 15 R. C. L., p. 835, sec. 310, 15 R. C. L., p. 862, sec. 336.

This judgment of the board of supervisors is absolutely conclusive; and all the evidence offered in the court below tending to impeach the judgment of the board is incompetent.    15 R. C. L., p. 863, sec. 337.

It is true that the first order of the board of supervisors, issuing these bonds, did not make the maturities thereof conform exactly to the requirements of chapter 207 of the Acts of 1920.· After these objections were filed in the chancery court, and before the hearing therefor, the board of supervisors entered its order, changing the maturities so as to strictly conform to chapter 207 of the acts of 1920.    The matter of the maturities of bonds is a question that is expressly fixed by this statute and is a matter of detail that the board of supervisors has a right to change at any time, so as to conform to the requirements of the statute, without giving any notice to anybody. It does not affect the validity of the bond issue.

It is next contended by appellant that part of sections 13, 14 and 18 are in the state of Tennessee, and that section 18 was left out, and that the board had no authority to incorporate lands that are in Tennessee in this district. As to section 18 being left out and the fact that there are lands on three sides of it in the district, this is immaterial. Whatever the object of the board of supervisors may have been this certainly cannot now be inquired into.    This is a matter with reference to roads and is exclusively within their jurisdiction; and there is no requirement of any statute that a road district shall be regular in form.    The form of a road district, therefore, is a matter entirely· within the discretion of the board of supervisors.

Conceding for the sake of argument that part of sections 13 and 14 does lie in Tennessee, this record shows that the board of supervisors made no attempt to take any territory in Tennessee. The petition starts out by saying: "The undersigned petitioners, residing in the hereinafter described territory in Alcorn county, Mississippi." If there is any part of sections 13 and 14 in Tennessee, that part is certainly not included in this petition. To the same effect is the first order on this petition, which is as follows: "Comprising that of the first and second supervisor's district of Alcorn county," and then the territory ,is set out. The notice of election starts out in the same manner: "Whereas, a petition has been filed with the board of supervisors of Alcorn county, asking that the territory hereinafter described," etc.,; and the order issuing the bonds likewise sets out that "this territory in Alcorn county, Mississippi."

From this record and these facts, no one could have been misled into believing that any Tennessee territory was included in this road district. As to that matter, all the qualified electors of the county were charged with notice of the fact that the board of supervisors of Alcorn county had no jurisdiction in Tennessee; and, if these orders could be construed as an attempt on the part of the board of supervisors to include any territory in the state of Tennessee, the same would have been treated .as mere surplusage by the court, and would in no manner affect the order with reference to that part thereof lying in Mississippi. *Board of Supervisors of Desoto Co.* v. *Dean,* 120 Miss. 334, 82 So. 257.

ETHRIDGE, J., delivered the opinion of the court.

Certain persons filed with the board of supervisors of Alcorn county, Miss., a petition in the following language:

"The undersigned petitioner, residing in the hereinafter described territory in Alcorn county, Miss., respectfully petitions your honorable body that they be allowed to come

under the provisions of chapter 176 of the Acts of 1914 and amendments thereto, including chapter 277 of the Acts of 1920, and that bonds be issued on the said territory for the purpose of constructing roads in said territory as provided by said laws. The territory desired to come under the provisions of said acts is described as follows: The southwest quarter of section 17, all of section 19, the west half of sections 20 and 29, all of sections 30, 31, and the west half of 32, all in township 1, range 8; all of sections 13, 14, 23, 24, 25, 26, and the west half of 35, and all of 36, in township 1, range 7."

This petition was signed by thirty-five names and was presented to the board of supervisors on the 3d of July, 1922, being the first Monday in said month. The board continued in session from day to day until the 7th of July, on which day it was ordered that, pursuant to the petition filed containing more than twenty per cent. of the qualified electors in the proposed Purdy road district, an election was ordered to be held in said district on the 31st day of July, 1922, to ascertain whether or not the said district should be incorporated into a road district and bonds issued thereon not to exceed twenty thousand dollars, and ordering the election commissioners of said county to give notice of such election. This order, appearing upon the minutes, read as follows:

"In re Purdy Road District.

'Come on the matter of the organization of the road district known as the Purdy road district, comprising part of the First and second supervisors' districts of Alcorn county, and containing the following territory, to-wit: The southwest quarter of section 17, all of section 19, the west half of sections 20 and 29, all of sections 30, 31, and the west half of 32, all in township 1, range 8; all of sections 13, 14, 23, 24, 25, 26, and the east half of section 35, and all of section 36, in township 1, range 7.

"And it appearing that there is a petition on file containing more than twenty per cent. of the qualified electors residing in said territory asking that said territory be al-

lowed to come under the provisions of chapter 176 of the Acts of 1914, and amendments thereto, including chapter 277 of the Acts of 1920, and that bonds be issued on the said territory for the purpose of constructing roads in the road district, as provided by law, and it appearing that the election should be ordered, and that, if the election should carry, the said territory should be incorporated into a road district as prayed for, and that bonds should be issued thereon as provided by law, it is therefore ordered that the said territory be incorporated into a road district as provided by law and as prayed for, and that bonds be issued thereon, not to exceed twenty thousand dollars, for the purpose of constructing roads in the said road district as prayed for and as provided by law, providing the election so ordered shall be carried in favor thereof.

"It is ordered that said election be held in said territory on July 31st for the purpose of determining whether or not the said territory shall be incorporated into a district and bonds issued thereon, at which all qualified electors of said district shall be entitled to vote, and the election commissioners of Alcorn county are hereby ordered and directed to take such steps as may be necessary to hold said election according to law in said district on said date."

Thereupon notice of the election was given and an election held on the 31st day of July, 1922, and the commissioners of election returned to the board of supervisors that the election had been carried for the bond issue by a vote of thirty-five for the bond issue and twenty-four against the bond issue, with a majority of eleven in favor of the bond issue. Proof of publication of notice was filed with the board showing publication of the notice, including the territory described in the petition and in the order of the board of supervisors. Thereupon the board appointed road commissioners for the said district, and these commissioners ordered bonds to be issued in the sum of fifteen thousand dollars, being five thousand dollars less than the amount proposed to be issued in the notice and

order of the board. At the August meeting the board proceeded to order the bonds to be issued in accordance with the statute and ordered them certified to the state bond attorney for his opinion in accordance with chapter 28, Laws of 1917. The state bond attorney examined the said transcript and proceedings and certified to the board that in his opinion the proposed bonds were valid and legal. Thereupon the proceedings were filed in accordance with that chapter and notice given for hearing before the chancellor, at which time the appellants appeared and presented their objections; it being alleged that the board did not comply with chapter 207, Laws of 1920, and with chapter 176, Laws of 1914, and chapter 277, Laws of 1920.

It was first objected that the order of the board authorizing the issue of the bonds provided that five hundred dollars of said bonds is to mature each year from the year 1923 to the year 1932, inclusive, and one thousand dollars to mature each year from 1933 to 1942, inclusive, which is in direct conflict with chapter 207, Laws of 1920.

It is further objected that the board of supervisors in their order defining the boundaries of said district included in said road district all of sections 13 and 14, when in truth and in fact the north half of sections 13 and 14 were in the state of Tennessee, and that the said order of the board left out of the said district any and all parts of section 18 which lie directly east of section 13 and directly west of the southwest quarter of section 17 and all of section 17 which is included in the said road district.

It was also objected that the election was irregularly held, and that persons who were not qualified electors of the district were permitted to vote for the road district, and that the qualified electors opposed to the district were prevented from voting in the said election who would have voted against it, and various irregularities were charged, charging that various named persons who signed the petition were not qualified electors in the district, and that the petition did not contain twenty per cent. of the qual-

ified electors; that certain of the signers of the said petition did not reside in the territory; that certain other signers resided in the state of Tennessee. A number of persons who were charged to be entitled to participate in the election and who were rejected as electors were registered on the 31st day of March, 1922, and they are admitted to be qualified provided they were registered four months before the election, or provided that the provisions for four months did not apply to this election. It was alleged that twenty-four of the thirty-five signers of the petition were not qualified electors of the district, and that, eliminating these, there would not be twenty per cent. of the qualified electors of the district.

The board of supervisors answered the petition and denied generally most of the allegations of the objectors. But they admit in their answer that the order of the board of supervisors authorized and directed the issuance of bonds maturing five hundred dollars per year for the first ten years, and one thousand dollars per year for the succeeding ten years, but say that the matter of maturities is simply a matter of detail and one that can be regulated by the board of supervisors by its order at any regular, special, or adjourned meeting if the maturities conform to the requirements of law.

"Further answering the objections, they admit that part of sections 13 and 14 lie in the state of Tennessee. but they aver that this is not material for the reason that only part of sections 13 and 14 lying within the state of Mississippi would be included in the road district, and the order attempting to include that part which lies in Tennessee is mere surplusage and does not at all affect the validity of the order. They admit that section 18 is left out but they aver that there is no law requiring them to take in any particular section or sections of land or requiring that the road district shall take any special or particular form, and the fact that section 18 is left out is immaterial and does not affect the validity of the bond issue."

In so far as the proceedings creating the district, as affecting all questions of fact involved in the creation of the district (see the cases of *Liddell* v. *Noxapater,* 129 Miss. 513, 92 So. 631; *Dye* v. *Sardis,* 119 Miss. 359; 80 So. 761; *Johnson* v. *Yazoo County,* 113 Miss. 435, 74 So. 321; *Wolford* v. *Williams,* 110 Miss. 637, 70 So. 823; *Hinton* v. *Perry County,* 84 Miss. 536, 36 So. 565), it is settled that appeal is the only remedy where the jurisdictional facts authorizing the creation of a district or municipality were recited in the record, and that such orders cannot be collaterally attacked in a suit to contest the validity of the bonds issued by such district. It is said here that this rule does not apply because the petition does not recite the jurisdictional facts, and that consequently the board of supervisors did not have jurisdiction to make the order in which the jurisdictional facts are recited.

We do not think this distinction is well taken. The cases refer to the record, and, where the jurisdictional facts are recited in the record creating the district, the only method of contesting is by appeal. The record is based on the petition and the orders of the board of supervisors made thereon. The statute requires in the present case twenty per cent. of the qualified electors of the district to petition therefor. It does not require the petition itself to state as a fact that the signers do constitute twenty per cent. of the qualified electors. It would no doubt be better form for the petition to state directly and affirmatively that the signers constitute twenty per cent. of the qualified electors living in said district, but the essential thing under the statute is that the petition shall be in fact signed by twenty per cent. of the qualified electors, and it is the duty of the board of supervisors to determine for itself whether, as a matter of fact, the signers constitute twenty per cent. of the qualified electors. The statement in the petition, if it were contained therein, that they constituted twenty per cent., would not bind the board, but they would proceed to determine from proper sources and evidence whether in fact they constituted the required

percentage.  The petition and the order of the board to-
gether must be considered, and, the board having jurisdic-
tion to determine this fact, and having recited in their or-
der the facts to exist, the order is conclusive on collateral
attack.

However, the district as created must conform to law
and they have no jurisdiction to go beyond the confines of
the county in creating road districts, and especially they
have no jurisdiction to go beyond the limits of the state in
creating a district.  The district created must stand or
fall upon its validity as created, and it is not within the
power of the court to change the boundaries of the dis-
trict as created by the board of supervisors to make them
conform to law or to the territorial jurisdiction of the
board.  Inasmuch as the district as created went beyond
the limits of the state of Mississippi and included territory
in the state of Tennessee over which the state of Mississippi
has no sort of jurisdiction, it cannot be upheld.  The re-
cital of the board does not exclude any idea that the pe-
titioners and voters within the territory of the state of
Tennessee included in the district did not sign the petition
or vote for or against the measure.  It is unnecessary for
us to decide in this case whether or not leaving out section
18 or that part of it lying within the state of Mississippi
would avoid the validity of the district.  The drawing of
the maps of the territory embraced in the order will show
that the district is irregular in shape, that the west half of
that part of section 17 lying in the state was incorporated
in the district and that all of section 13 lying west of it
was incorporated in the district, and all of section 19 lying
south was incorporated in the district, and that the north
part of section 18 lies in the state of Tennessee.  Thus the
south half of section 18 is entirely cut off from the rest of
the county, and none of the funds could be spent in that
territory.

It is somewhat analogous to the stock law districts, pro-
vided by law which were construed by the court in the
cases of *Gore* v. *Doolittle,* 77 Miss. 620, 27 So. 997, and
*Garner* v. *Webster County,* 79 Miss. 565, 31 So. 210.

While we do not decide this proposition, we think it proper to call the attention of the public to these cases, because, if the board of supervisors has power to create road districts by the methods that were condemned in the stock law districts, much confusion and serious results will follow.

· The board having exceeded its territorial jurisdiction in the present case, its order is void, and the court has no power to change or alter a district, and thus create one contrary to what was petitioned for or what the board created.

The judgment of the court below will be reversed, and judgment entered here declaring the bonds invalid.

*Reversed and rendered.*